Taft, J.
The basic question presented in this case is whether the Common Pleas Court, on a determination by it that an elevator in its courthouse is essential to the efficient performance of the functions of that court, has the power to order the county commissioners to provide such an elevator.
The General Assembly has enacted certain statutes which relate to the power to provide buildings and facilities and equipment therein for the courts of a county. These read so far as pertinent:
Section 2418, General Code. “Until proper buildings are erected for the permanent seat of justice in a county, the commissioners shall provide a suitable place for holding the courts thereof.”
Section 2419, General Code. “A courthouse, jail, public comfort station, offices for county officers and an infirmary shall be provided by the commissioners when in their judgment they or any of them are needed. Such buildings and offices shall be of such style, dimensions and expense as the commissioners determine. They shall also provide all the equipment, stationery and postage, as the county commissioners may deem necessary for the proper and convenient conduct of such offices, and such facilities as will result in expeditious and economical administration of the said county offices. They shall provide all rooms, fire and burglarproof vaults and safes and other means of security in the office of the county treasurer, necessary for the protection of public moneys and property therein. ’ ’
Section 2433, General Code. “The taxing authority *348 of any county [the county commissioners] in addition to other powers conferred by law shall have power to purchase, for cash or by installment payments, lease with option to purchase, lease, appropriate, construct, enlarge, improve, rebuild, equip and furnish a courthouse, county offices, jail, county home, juvenile court building, detention home, public market houses, county children’s home and other necessary buildings, and sites therefor * *
See also Section 2348, General Code.
It is argued in effect that the word “facilities” may sometimes have a broad enough meaning to include an elevator; and that, under Section 2419, General Code, the commissioners are charged with the duty of providing ‘ ‘ such facilities as will result in expeditious and economical administration of * * * county offices.” It is further argued that that part of the statutory section (unlike the parts relative to providing a courthouse and certain other buildings and offices and providing equipment, stationery and postage for such offices) does not expressly make the duty of the commissioners a discretionary one; and that therefore the duty of the commissioners to provide such facilities is not a discretionary one. Reading this section as a whole, we do not believe that the General Assembly intended any such result. The words “stationery” and especially “equipment” might describe items which would also come within the usual meaning of the word “facilities.” We can see no valid reason for giving the commissioners discretion with respect to providing equipment and stationery necessary for the “expeditious and economical administration” of a county office and not with respect to providing other facilities necessary for such administration. Furthermore, such a construction would lead to the conclusion that the General Assembly did not intend that the commissioners should have discretion in determining *349 which of such other facilities were necessary for the expeditious and economical administration of any of the other county offices. The sentence applies to “county offices.” There may even be some question whether the General Assembly intended to have this sentence apply to the Common Pleas Court. It is certainly arguable that the Common Pleas Court is not included within the ordinary meaning of the words “county offices.” In any event, after it had expressly stated in each of the first three sentences that the duties specified for the commissioners were to be discretionary, we believe that, if the General Assembly intended that the duty of the commissioners specified in the latter part of the third sentence should not be discretionary, it would have clearly expressed such an intention.
This conclusion is fortified by the legislative history of Section 2419, General Code. The third sentence of that section was added to the section by House Bill No. 524 in 1919. 108 Ohio Laws (pt. 1), 387. That-bill had been introduced as an emergency measure. It added to the section as it had theretofore existed only the language now found in the third sentence of the section. In the bill as introduced, the third sentence read:
“They shall also provide all the equipment, stationery and postage, as each of the several county officers may deem necessary for the proper and convenient conduct of such offices, and such facilities as will result in expeditious and economical administration of the said county offices.” (Emphasis added.)
As introduced, the bill would have imposed upon the commissioners a mandatory duty to provide “all the equipment, stationery and postage, as each of the several county officers may deem necessary.” However, it woulu then have been arguable that the commissioners were to have discretion with respect to “facili *350 ties.” When the bill came np for hearing before the House, it was amended from the floor by striking the words “as each of the several county officers” and inserting “as the county commissioners” in lieu thereof. (See 108 Ohio House Journal, 808.) As so amended, the bill was adopted. In our opinion, this legislative history of the third sentence of the section clearly negatives any legislative intention that the duty of the commissioners, with respect to furnishing “facilities,” was to be a duty to furnish “such facilities” as anyone besides the commissioners reasonably believed would “result in expeditious and economical administration of the said county offices.”
Our conclusion is that there is nothing in the foregoing statutes which indicates that the General Assembly intended the Common Pleas Court of a county to have any power to order the commissioners to exercise their power thereunder to provide equipment or facilities for a courthouse whenever a court determined that such equipment or facilities were essential to the efficient performance of functions of the court.
Of course, there may be instances with respect to the provision of quarters, facilities and equipment for the Common Pleas Court where the commissioners fail to perform mandatory duties imposed upon them by these statutes or grossly abuse their discretion with respect to discretionary duties imposed upon them thereby. In such instances, in the absence of any other adequate remedy in the ordinary course of the law, a writ of mandamus might be an appropriate remedy. See Ex Parte Black, 1 Ohio St., 30, 35, 37. However, in view of the interest which the Common Pleas Court would necessarily have in such instances with respect to the remedy sought, it is apparent that such a remedy should probably be sought in another court, such as this court. Cf. Zangerle, Aud., v. Court of Common Pleas, 141 Ohio St., 70, 79, 46 N. E. (2d), *351 865; Barnett v. Ashmore, Aud., 5 Wash., 163, 31 P., 466. We do not believe therefore that we should regard the instant proceeding in the Common Pleas Court as the equivalent in substance of an action in mandamus against the commissioners to enforce any duties imposed upon them by the foregoing statutes. See Ex Parte Widber, 91 Cal., 367, 27 P., 733. It may be observed further that the record does not disclose whether there was on the first floor of the Marion County courthouse space which would be convenient and suitable as quarters for the Common Pleas Court. See Zangerle, Aud., v. Court of Common Pleas, supra.
In our opinion, in order to sustain the judgment of the Court of Appeals in the instant case, we must conclude that the Common Pleas Court had an inherent power, apart from statute and notwithstanding the statutes hereinbefore referred to, to provide an elevator for the courthouse if it determined that such elevator was essential for the efficient performance of the functions of the court. Unless it had such an inherent power, it certainly could not order the commissioners to provide that elevator.
Both the Court of Appeals and the Common Pleas Court relied, and counsel for appellee now rely, heavily upon the case of Zangerle, Aud., v. Court of Common Pleas, supra. The syllabus in that case reads:
‘ ‘ 1. The primary and paramount purpose of a courthouse, as its name implies, is to furnish the rooms and facilities essential for the proper and efficient performance of the functions of the court.
“2. Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government.
*352 • “3. Such courts may pass upon the suitability and sufficiency of quarters- and facilities for their occupation and use, and may exercise control over the courthouse to the extent required to assure the provision, equipment and maintenance in the courthouse of rooms and facilities essential for their proper and efficient operation.”
Standing alone there is language, especially in the second paragraph of that syllabus, which is broad enough to lend some support to the judgment of the Court of Appeals in the instant case. However the rules of law stated in a syllabus must be interpreted with reference to the facts of the case and the questions presented to and decided by the court. In the Zangerle case, the Common Pleas Court ordered that rooms in the courthouse occupied by the auditor be made available for the court for the reason that the space which the court then had was unsuitable and inadequate. When the auditor and the commissioners failed to furnish those rooms, the court had the sheriff lock the auditor’s door. Thereupon the auditor as relator brought an action in prohibition in this court against the Common Pleas Court. The Common Pleas Court demurred to the petition and this court held in favor of the respondent. In effect that case involved only a decision that, since, as its name implies, a courthouse “is to furnish the rooms and facilities essential for the proper and efficient performance of the functions of the court,” the court “may exercise control over the courthouse to the extent required to assure” its having whatever portion thereof (the words “in the courthouse” were emphasized in the syllabus) is “essential for” its “proper and efficient operation.”
The decision did not involve any right of the court to compel the remodeling or even the repair of any part of the courthouse. .
State, ex rel. Bittikofer, v. Babst, Judge, 97 Ohio St., *353 64, 119 N. E., 136, involved only the question as to whether the commissioners could deprive the court of the use of certain rooms which had been designated for use by the court when the courthouse was built. See also In re Courtroom and Offices of Fifth Branch of Circuit Court, 148 Wis., 109, 134 N. W., 490, Ann. Cas., 1913B, 98, which involved an effort to move a court from convenient quarters to quarters which were unsuitable and inconvenient, and Board of Commissioners of Vigo County v. Stout, 136 Ind., 53, 35 N. E., 683, 22 L. R. A., 398, where the court sought to enforce its right to use for the court an existing elevator in the courthouse. None of those cases involved any right of the court to compel the building, remodeling or even the repair of any building.
Commissioners of Trumbull County v. Hutchins, 11 Ohio, 369, involved a statute which provided that the clerk was to receive a reasonable allowance for blank books and stationery. This statute was construed to include within the word “stationery” a press which was necessary for the use of the seal of the court, and to require the county commissioners either to furnish or pay for that press out of county funds. As herein-before pointed out, there is no statute in the instant case which can be construed to impose upon the commissioners a mandatory nondiscretionary duty with respect to furnishing an improvement to the courthouse, such as an elevator.
The case of Province of Tarlac v. Gale, 26 Philippine Rep., 338, involved statutes which, unlike our statutes, imposed mandatory duties upon certain officials with respect to providing what the court had there ordered them to provide it with. This is apparent from a reading of those statutes as quoted in the court’s opinion and of the opinion construing those statutes. Thus it is said in the opinion at page 351 and following:
*354 “Section 13 is mandatory and imposes upon the provincial board or provincial officials * * * a duty which cannot be evaded at their, pleasure. * * * While the officials have discretion * * * that discretion is limited and subordinate. When it comes in conflict with the judgment of the court it must yield, the court being the only official which, in the last analysis, may determine, under the law quoted, what is necessary for its efficiency. * * *
“Section 10, as is seen, requires the provincial officers to furnish to the court such furniture, fixtures and supplies as may be necessary for the proper administration of justice. The duty here specified is mandatory and cannot be evaded. While a certain discretion lies with the official who furnishes the articles referred to, such as deals with color, form, style, quality, etc., that discretion is always subject to the paramount authority of the court which, as in the case of quarters, is always the final authority determining what is necessary and essential for the proper administration of justice. * * *
ti# # #
“ * * * In the case before us the Legislature has already acted—has performed its functions. It has expressly laid upon certain provincial officials the duty to furnish equipment for the court. Wherever there is a duty there is a corresponding right; and whenever a duty is laid upon an official there is another official or person who has the right to enforce the performance of the duty. The duty having been laid upon the provincial officials to furnish equipment for the Courts of First Instance, the court has, as matter of construction, and without using its extraordinary powers, the right to enforce the performance of that duty. The demand of the court that that duty be performed is not a usurpation of legislative functions; it is a con *355 firruation of legislative functions already exercised. Nor is it an abrogation or a modification of a legislative act. It is a demand that the legislative will be respected by obedience.”
We have found very few cases wbicb recognize the existence of any inherent power of a court, apart from statute, to provide for its requirements something which is not already available for it in the courthouse, especially where statutes such as those in our state confer power upon other officials to provide therefor.
The case of Venango County v. Durban (Pa. 1856), 3 Grant Cas., 66, involved the question whether a county was liable for the reasonable charges of. a printer for publishing the trial list in pursuance of a rule of court requiring the publication. In holding that it was, it was said in the court’s opinion by Lewis, C. J.:
“Courthouses are erected, judges selected, and juries impanelled for the purpose of administering justice in civil as well as in criminal cases. Where no other provision is made for the necessary expenses of the judiciary, in its official duties, the county where the court is held is in general liable.” (Emphasis added.)
In McCalmont v. County of Allegheny, 29 Pa. St., 417, it was held that a county was liable for the expenses of providing an apartment in which to keep and preserve the records and seal of the Western District of the Supreme Court and for incidental expenses of the court although no legislative act had expressly provided that such expenses should be paid by the county. The decision was based upon the usage that had prevailed for any county in which the Supreme Court held sessions to defray such expenses. It may be observed that the expenses involved were very modest and did not involve any permanent improvements to a building, such as are involved in the in *356 stant case. Likewise it is not claimed that there is any applicable usage in the instant case such as was given as a reason for the decision rendered in the Pennsylvania case.
On the other hand in Commrs. of Neosho County v. Stoddart, 13 Kan., 207, it was held that a court did not have power without the consent of the county commissioners, who were given duties by statute to provide for the court’s requirements, to create an indebtedness against the county for “matting placed or to be placed upon the floor of the courtroom” even where the Court found that “the health, comfort and convenience of those who are required to be in attendance * * * demand that some suitable carpeting be placed upon the floor of the courtroom.” See also Cleary v. County of Eddy, 2 N. D., 397, which involved rental of an office for a probate judge.
Although there are statements in the opinion in the case of State, ex rel. Kitzmeyer, v. Davis, Controller, 26 Nev., 373, 68 P., 689, which support the contentions of appellee, those statements were not necessary to support the decision which the court rendered. In that case the Supreme Court, having determined that certain chairs and carpet were necessary, directed its clerk to request the Board of Capitol Commissioners to purchase them. The request was refused. Then the court directed its bailiff to purchase and place in the courtroom the articles required. He did this and presented his bill to the Board of Examiners which approved it. He thereupon presented the approved bill to the state controller and demanded a warrant upon the treasurer for its amount which demand was refused. The bailiff as relator then brought an action in mandamus to compel the controller to draw a warrant upon the contingent fund for payment of the bill. After referring to a statute creating the Board of Capitol Commissioners and providing that it should *357 control the expenditure of all appropriations for furnishing, repairing and maintaining the buildings and grounds and offices, the court pointed out that that statute contained a proviso “unless otherwise provided,” and then stated:
“Long before the passage of the act, which is assumed to' grant this absolute control to the board, and shortly after the adoption of the Constitution, the Legislature gave to this court, in express terms * * * authority to bind the state in providing a suitable room in which to hold its sittings when the state has failed to make such provision—the precise case presented by this record—and, as above stated, it is not pretended that the articles directed to be purchased by the order of the court were not necessary to render the courtroom suitable for the purposes of the court.
“Section 2518 stands as it was originally passed, unmodified and unrepealed.
“If the Legislature had intended to repeal it by the passage of the act creating the Board of Capitol Commissioners, it would have certainly omitted therefrom the proviso quoted, or would have inserted other language from which such intention could have been inferred.”
Thereafter the court went on to state that, in the absence of the statutory authority which it had, there was an inherent power in the court to make such an order. Obviously, in view of that statutory authority, what was said with regard to the inherent power of the court was not necessary for the decision of the case.
Although the modifications involved were much more substantial than in the instant case, the Supreme Court of Indiana had before it a problem as to whether one of its Circuit Courts had an inherent power to order repairs of its courthouse which the Supreme Court *358 found amounted in substance to practically rebuilding the courthouse. Thus in Board of Commissioners of White County v. Gwin, Sheriff, 136 Ind., 562, 36 N. E., 237, 22 L. R. A., 402, where a decree of the Circuit Court directed “the repair of the' courtroom” and found “that every part of it is necessary and proper in the making of said repairs” and the Supreme Court found from the record “that the intent was to come as near building a new courthouse as possible, and yet retain * * * [a] semblance of repairs,” it was said in the opinion of the court by McCabe, J.:
“The power to repair the courtroom of the Circuit Court is akin to the power to punish for contempt. Like the power to punish for contempt, it springs out of absolute necessity, out of that highest law of nature, self-preservation, and does not belong to the general jurisdiction, but is incidental to such jurisdiction, and is inherent in the court, and was so when the Circuit Courts were first called into existence by the Legislature.
i i * # #
“* * * There is no necessity for the exercise of any power beyond repairs by the Circuit Courts. Both the power to repair and to build courthouses has been wisely conferred upon the board of commissioners in the exercise of the large administrative and ministerial powers constitutionally vested in that body by the Legislature. And the exclusive power to build courthouses and other county buildings, has been vested by the Legislature in such county boards.
“But a door may be broken down, by casualty or otherwise, leading to and from the courtroom, so as to interfere with the due administration of justice therein, or a window broken out with like effect, or furniture destroyed, or any other circumstance that transpires, by which the courtroom is so impaired in *359 its usefulness as to materially interfere with the due. administration of justice therein; the inherent power of the court ought to, and does, exist to afford temporary relief for the time being to order and pay for such repairs as will enable the court to continue the due administration of justice therein. But it is contended that, even if this inherent power does exist, it is not an unlimited power, and must be confined to repairs in the sense of that necessity, out of which the power springs, and that it does not exist to the extent of practically rebuilding or reconstructing the courthouse, or to the construction of lasting and permanent improvements, such as extensions, additions and enlargements to the courthouse.
“We are of the opinion that this contention must prevail because such is the law.
í i * * #
“Under the circumstances disclosed in the evidence, the court could have protected itself precisely as it could and would have done if the old courthouse had blown down or burnt up. No one would have thought of an attempt on the part of the court to rebuild it, but the court would at once. have secured another room, as it actually did do, for temporary use in the administration of justice, until the proper authority could rebuild the courthouse.
i i * * #
“* * * the primary duty, as we have seen, was devolved on the county board to keep the courthouse in repair and the exclusive power to rebuild.
é c # m *
“While there is, as before observed, no precedent upholding the extension of the incidental power of a court to repair its courtroom to the construction or reconstruction of a courthouse, there is respectable authority against such extension, in the following cases: Commissioners v. Stoddart, 13 Kan. 207; Bar *360 nett, Sheriff, v. Ashmore, Aud. [5 Wash., 163], 31 Pac. Rep., 466.
“This incidental power has existed as long as courts of general jurisdiction have existed under the English common law. The strongest reason why it does not extend to building courthouses, or the equivalent thereof, is found in the fact that not a single precedent can be cited upholding such a power, though numerous occasions have existed in this country for a century, calling for the assertion thereof.
¿ i # * *
“We therefore conclude that the White Circuit Court had no jurisdiction or power to make the order in question, and that it was void, and therefore subject to collateral attack by way of injunction.”
Obviously the provision of an elevator in the Marion County courthouse will necessarily involve an addition to that building. In the instant case, we are not concerned merely with repairs to or maintenance of a building, the rental of real estate, the furnishing of services or of items of personal property, or any effort of the Common Pleas Court to appropriate and take for its use space in the courthouse other than that which it is already occupying.
Also we are confronted with statutes which confer upon the county commissioners the power to provide a courthouse “when in their judgment” it is “needed.” Those statutes likewise provide that such courthouse “shall be of such style, dimensions and expense as the commissioners determine. ’ ’
We do not want it understood that a court is utterly powerless to require the furnishing of reasonable improvements and facilities which may be necessary to enable it to carry on its important governmental functions in a proper and respectable manner. However, we have been referred to and have been able to find *361 no precedent which recognizes any inherent power of a court to provide a substantial addition to its court-, house building, especially where applicable statutes provide- that other officers are to have discretionary powers with respect to providing such courthouse and determining its style, dimensions and expense. Our conclusion is that the Common Pleas Court has no such inherent power.

Judgment reversed.

Hart, Zimmerman, Stewart and Lamneck, JJ., concur.
Weygandt, C. J., and Middleton, J., dissent.