## LOGAN CITY v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5560.   Decided December 12, 1934.   (38 P. [2d] 769.)

*Leon Fonnesbeck,* of Logan, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendants.

STRAUP, Chief Justice.

Logan City owns and operates an electric lighting plant and a water system by means of which it for compensation supplies light, heat, and water for domestic purposes to its inhabitants. Because of unemployment conditions prevailing in Logan City and elsewhere, a number of its patrons were unable to pay for light, heat, or water so furnished them by the city, and thus became indebted to it on such account. To pay off or to apply on such indebtedness, and for a continuance of service, and because of such unemployment conditions workmen were unable to obtain employment, an agreement was entered into by and between the city and forty or more of its patrons, by the terms of which the city agreed to furnish work to such patrons repairing and oiling streets of the city for which the city agreed to pay the workmen $3 per day for common labor, working 8 hours a day, or 37½ cents an hour, $2 of which were to be applied on the indebtedness and for continued service, and the remaining $1 to be paid to the workmen to be used by them as they desired. The proposition was accepted by the men without reservation who entered upon their employment, which consisted, in some instances, of repairing already constructed streets for oiling and oiling them, in other instances leveling the surface of them and spreading oil upon them. Some of the work was done in 1932 some in 1933 in all on constructed public streets of approximately 180 blocks. The employment lasted several months. The amount so paid was received by the workmen without complaint and none made until after the work was completed and the employment ceased. The city was without funds to do or carry on the work and to enable it to do so salaried employees of the city consented to a reduction of their salary the amount so deducted to be used to carry on the work; and, in addition thereto, the city temporarily transferred moneys from other departments of the city to the street department. Otherwise the city was financially unable to carry on the work or give the employment.

After the work was done and the workmen fully paid in

accordance with the agreement, a representative or the secretary at Logan of the unemployed, for and on behalf of some of the workmen who joined therein, filed an application or petition with the Industrial Commission alleging that the city worked the men on a basis of 8 hours per day 6 days a week and in some instances on Sundays, that the moneys out of which the cost of the work was carried on was not set up in the city's budget as emergency relief fund nor provided from R. F. C. funds; that the program was not initiated as emergency relief for unemployment, and that the road oiling program constituted "public works," as defined by Session Laws of Utah 1933, c. 39, and was carried on in violation thereof. Whereupon the petitioners prayed that the commission order the city to pay each workman who worked on the road oiling program an amount sufficient to compensate him for the difference between what was paid by the city and what should have been paid under the schedule of wages as fixed by the Industrial Commission.

A citation was issued to the city in response to which it, among other things, challenged the jurisdiction of the commission to hear or try the alleged controversy, denied that the work done was "public work" within the meaning of the statute referred to, averred that the wage paid by the city was the prevailing rate of wages in the locality in which the work was performed asserted the unconstitutionality of the statute under which the demanded relief was prayed, and further claimed that, if the city had been required to pay more than was paid, it would have been financially unable to have done the work or given employment to any of the workmen so employed by it.

On a hearing had before the commission it made findings and conclusions and ordered that the city, within twenty days, pay the workmen who performed labor in improving, building, and construction of roads within the limits of the city on June 27, 1933, and subsequent thereto, the difference between the amounts paid to the workers and the amounts that should have been paid to each as provided by law and

as per the schedule of rates per hour for the various classified workers for each and every day so worked as enumerated in the order of the Industrial Commission fixing the general hourly rate of pay on public works. The rate of wages so fixed by the commission to be paid workers was 50 cents an hour for common labor, 75 cents for oil spreaders, 80 cents for teamsters with teams, and upwards for other classified labor to $1.50 an hour. The amount paid by the city for common labor was 37½ cents an hour working 8 hours a day, and $4 per day for teamsters with teams. The difference to be paid between the wage as fixed by the schedule of the commission and the amount which was paid by the city amounted to over $4,000. From such order and proceedings the city has prosecuted an appeal or review.

The statute, Laws of Utah 1933, c. 39, so far as material and drawn in question, are sections 1, 2, 4, 7, and 9. Section 1 provides:

"Not less than the general prevailing rate of wages per hour for work of a similar character *in the locality in which the work is performed*, and not less than the general prevailing rate of wages per hour for legal holiday and overtime work, shall be paid to all laborers, workmen and mechanics employed by or on behalf of the state of Utah, * * * city * * * engaged in the construction of public works, *exclusive of maintenance work.* Laborers, workmen and mechanics employed by contractors or subcontractors in the execution of any contract or contracts for public works with the state, * * * city * * * shall be deemed to be employed upon public works."

Sec. 2: "The public body *awarding any contract* for public work on behalf of the state of Utah or * * * city * * * undertaking any public works, shall ascertain from the industrial commission of Utah the general prevailing rate of wages per hour for each type of craft or work needed to execute the said contract *in the locality in which the work is to be performed,*" etc.

Sec. 4.: "It shall be the duty of *such public body awarding the contract,* and its officers and agents, to take cognizance of complaints of all violations of the provisions of this act committed in the course of the *execution of a contract.* When in their opinion the provisions of this act have been violated it shall be the duty of the members of the said board to make a written report of such violation to the industrial commission of the state of Utah who shall, upon giving notice

*to the said contractor*, finally determine whether such violations have been committed and in the event that they so find, after proper hearing, the said industrial commission shall make an order," authorizing the said board to withhold and retain from the *contract price* a sum equal to the amount of the penalties assessed *against the contractor;* that the sum so withheld shall be paid over to the Industrial Commission from which sum there shall first be deducted and paid over to the employees, etc., who have not received the prevailing rates as provided by the act, a sum equal to the difference of the sum that they have actually received and the sum they would have become entitled to, if they had been paid the prevailing rate, and the balance to be paid over to the Industrial Commission to establish a fund to enforce the provisions of the act. (Italics added).

Sec. 7: "Thirty hours shall constitute a working week, on all works and undertakings carried on by the statute * * * or municipal government,"

and that any person, corporation, etc., who shall require or contract with any person to work upon such works longer than 30 hours in one week, except in cases of emergency where life or property is in imminent danger, shall be guilty of a misdemeanor.

Section 9 provides that the provisions relating to hourly wages shall not apply in cases where men are employed and paid out of emergency relief or R. F. C. funds.

The points urged are as asserted before the commission, and, further, that the evidence and the findings are insufficient to justify the order; that by the evidence without dispute it was shown that the prevailing wage for common labor in Logan and in the locality in which the work was performed was from $2.50 to $3 per day and $4 for man and team working 8 hours a day and that the city paid $3 a day for common labor and $4 for a man and team; that the schedule rate fixed by the commission was not fixed until after the men were employed and the work commenced and then was fixed not with respect to any locality or localities, but only generally over and for the state and that the city had neither knowledge nor notice of the schedule as so fixed by the commission; that the work done by the city was not public work but "maintenance work," which was expressly

excluded from the operation of the statute; and that the act otherwise did not apply to a case such as here, for that, considering the act in all its parts and the relation each bore to the whole, discloses a legislative intent rendering the act applicable only to *contracts* let or awarded for public work.

The disposition of the case does not require a consideration of all the points urged, for that the commission, as we think, was without jurisdiction to hear or determine such a controversy as here presented, for neither by the "Industrial Commission" nor "Workmen's Compensation Act" R. S. Utah 1933, title 42-1-1 et seq., nor by Laws of Utah 1933, c. 39, heretofore referred to, is any such power conferred on the commission. The controversy so presented involves a dispute as to the amount of compensation to which the persons so employed by the city are entitled. What is so presented is in the nature of a proceeding or action to recover compensation for work and labor performed. By the city it is contended that those rendering the service were paid in full in accordance with an agreement entered into between them and the city. On the other hand, those performing such service, while admitting or not disputing payment in full in accordance with the agreement, assert that under the law they were entitled to additional compensation and prayed for an order requiring the city to pay it. The matter thus affected individual rights and interests of those involved in the controversy the same as in any action or proceeding where one is claiming and demanding compensation for services rendered and performed which to hear and determine invokes judicial action and power. The commission is no such tribunal authorized to exercise such a function or power. It chiefly is an administrative body, and while in the exercise of its functions it is required to pass on facts and to determine its action by the facts found, in a sense exercising in such respect a quasi judicial function, a function lying midway between ministerial and judicial functions, yet, it is not clothed with power to exercise judicial acts or functions to decide or adjudicate rights of persons or property in spe-

cific cases where such rights and the demanded relief are the basis of the action or proceeding. Under out Constitution, art. 8, § 1, all judicial power is vested in the Senate sitting as a court of impeachment, and in the Supreme and district courts and justices of the peace and such other courts inferior to the Supreme Court as may be established by law. As may be established by law means as provided by statute creating a "court," etc. The Industrial Commission is not such or any court. It, as created by the statute, being an administrative board or commission, any attempt to confer on it the exercise of judicial powers and functions is futile, and violative of the constitutional provision referred to. It is unnnecessary to now determine whether section 4 of the Laws of Utah 1933 is or is not in violation of such provision, for that the presented case does not fall within such section. It is enough to determine, as we do, that the power of the commission invoked and exercised by it is judicial in character, and that no such power is or may be conferred upon it.

Thus, the order of the commission is annulled and vacated and the proceedings dismissed. No costs.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.