Matthias, J.
 

 It is contended by the respondents in support of the demurrer that the petition for a writ of prohibition cannot be entertained or considered by this court for the reason that other adequate remedies are available to the relator, particularly the remedy of injunction.
 

 The relator in- this action challenges the jurisdiction of the Court of Common Pleas to make the finding and order in question in an
 
 ex parte
 
 proceeding or to proceed further with the execution of such order. The respondents ■ urge that an action in injunction to restrain the • sheriff from carrying such order into effect would be an appropriate and adequate remedy, and therefore an action in prohibition may not be maintained.
 

 In our opinion, a sufficient answer to this contention of the respondents is found in the fact that neither the Court of Appeals nor the Supreme Court has original jurisdiction in injunction, and such action would necessarily be brought in the Court of Common Pleas and would be either against the Court of Common Pleas and the judges thereof as defendants or against the sheriff seeking to prevent his doing the very thing that court had ordered to be done, which would constitute a collateral attack.
 

 However, the theory and claim of the relator is that the order of the court challenged was wholly void. The original proceeding which is brought into question by this suit is a very Unusual one and in our opinion an action in prohibition is the appropriate method of presenting for determination the substantive question involved, which is: Has the Court of Common Pleas the authority to require surrender of the rooms designated for the use of the court and to accomplish such purpose
 
 *80
 
 .in. an
 
 ex parte
 
 proceeding and by the issuance of the ■order herein challenged?
 

 The facts before us upon which the question of law .is based are those set forth in the petition and also the ■order of the Court of Common Pleas, for it is expressly made a part of the petition. Therefore, the .situation presented by the petition is one in which the •Court of Common Pleas found that the due and orderly .administration of justice requires room in the courthouse in addition to that heretofore provided and that the space now occupied by the Department of Domestic .Relations, which is in the basement of the courthouse, -for the reasons set forth in its finding and order, is .not only unfit as a location for the proper functioning •of the court but, even with the additional space there .available, is wholly inadequate for such purpose.
 

 It is disclosed that the work of the court has gradually and constantly increased and that by reason thereof it has become essential that not only additional ••space be provided, but that the court shall be removed from the basement to a location fit and appropriate for the various uses and purposes required for the Department of Domestic Relations.
 

 It may be well to concisely state the conflicting ■claims of the contending parties to this unusual and regrettable controversy. The relator contends that ¡the building housing the courtrooms and county offices, having been constructed under the authority’and direction of a building commission appointed for such purpose pursuant to statutory provisions, which board allocated and set apart and designated rooms in such building for the use and occupancy of the various courts and the several county offices, and the' rooms involved in this controversy having been so designated and •subsequently assigned by the board of county commissioners for the use of the county auditor and ever since .so used and occupied, and no other designation or or
 
 *81
 
 der having been made by the board of county commissioners, the courts have no power to alter or interfere with such allocation or assignment, but that such power and authority reside only in the board of commissioners of the county.
 

 The respondents contend that the structure having been erected under and pursuant to the provisions of the statute as found in 97 Ohio Laws, 111, of which Section 2333, General Code, is the codified successor, receives its characterization from the language of the original enactment which directed the procedure to be followed “to erect a courthouse,” and that the primary purpose of a courthouse is to provide a permanent seat of justice for such county, and therefore, in event of any controversy concerning space therein, the first and predominating right is that of the court. Eespondents further contend that the building commission, being a creature of statute, has only such powers as are thereby conferred,, and therefore its authority ended with- the completion and acceptance of the building, and any indication or designation as to the purpose or use of any portion of the structure by such commission has no permanent binding effect.
 

 The question presented by these conflicting contentions is substantially as follows: When, by reason of the constantly increasing volume of litigation and ot-her resulting essential activities, the court is unable properly and adequately to function without additional space which is appropriate for the purpose of conducting the business of the court, and the county commissioners neglect or refuse to make such changes as are necessary to provide the additional space in the courthouse required for such purpose, has the court any authority in the matter, or is it altogether powerless ?
 

 The answer to this question, will be determinative of the issue presented.
 

 It is provided by Section 2418, General Code, that
 
 *82
 
 “Until proper buildings are erected for the permanent seat of justice in a county, the commissioners shall provide a suitable place for holding the court thereof. ’ ’
 

 From a consideration of all the statutory provisions .relative to the subject under consideration, the conclusion is irresistible that the primary and predominant purpose of a courthouse is for the uses of the court .and to provide the facilities essential for the proper .and efficient discharge of the duties and functions thereof. It is true that the law (97 Ohio Laws, 111) under which the structure was erected contemplated the housing of county offices, and yet, in referring to the •duties and tenure of the building commission, it is therein stated that the commission “shall serve until the completion of said courthouse as contemplated herein. ’ ’
 

 The opinion of this court in the case of
 
 Mackenzie
 
 v.
 
 State, ex rel. McMahon,, Pros. Atty.,
 
 76 Ohio St., 369, 81 N. E., 638, which involved a controversy arising out of the proceedings for the construction of the very building in controversy in this case, supports the view that the statute authorizing the proceeding contemplates the erection of a “courthouse.”
 

 The only previous case reaching this court involving a controversy which is similar to this one is that of
 
 State, ex rel. Bittikofer,
 
 v.
 
 Babst, Judge,
 
 97 Ohio St., 64, 119 N. E., 136. However, the order of the court there in question required the vacation of a room in the courthouse of Crawford county occupied by a county officer under the direction and with the approval of the county commissioners, which room, upon the rebuilding of the courthouse, had .been designated as “chancery room” and occasionally, theretofore, had been used for some court purposes. Vacation thereof was ordered by the Common Pleas Court in an
 
 ex parte
 
 proceeding, and the jurisdiction of the court was challenged by an action in prohibition, just as in this case.
 
 *83
 
 Upon hearing upon its merits, a writ of prohibition was denied by the Court of Appeals, and that judgment was affirmed by this court. In the course of the
 
 per ■curiam
 
 opinion in this court, it was stated that “the primary purpose of the courthouse is to provide a permanent seat of justice.”
 

 In that case, after directing attention to Section .2418, General Code, hereinbefore cited, providing that it is within the discretion of the county commissioners to determine what is a suitable place for holding the ■courts of the county “until such permanent seat of .justice is erected,” the court further states: “After the building is erected, the county commissioners have no discretion or authority to deprive the courts of the use of any part of the building provided by this building commission for the administration of justice. ’ ’
 

 It seems significant that no authority is vested by statute in the county commissioners to provide per.manent quarters for court purposes outside the courthouse, but specific authority is conferred to provide for county offices elsewhere, if that should become necessary, which, however, does not appear to be the -case here;
 

 If we look elsewhere for authority upon the proposition that the judiciary has the prior right to be located in the courthouse and the subordination of other “uses thereof to the requirements for court purposes, we find in 21 Corpus Juris Secundum, 255, Section 166, the following: “The term ‘courthouse’ is used to designate the building where courts are held, and where the people attending such courts are supposed to congregate. ’ ’
 

 The general principle is there stated that “While •other bodies or officers are charged with the duty of providing suitable buildings or rooms for the holding •of courts, the court or judge may pass on the suitability ■of the quarters furnished and exercise control over the
 
 *84
 
 courthouse to the extent necessary to secure suitable rooms for, and to prevent interference with,, the discharge of public business.,”
 

 In the case of
 
 Bd. of Commrs. of Vigo County v. Stout,
 
 136 Ind., 53, 35 N. E., 683, it is said:
 

 “The,‘courthouse’ as the term implies, is chiefly for the use of the court; the remaining uses being subordinate, and to a great extent incidental.
 

 “Courts are an integral part of the government, and entirely independent; deriving their powers directly from the Constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of the courts.
 

 “Even without statutory enactment
 
 * * *
 
 the court * *
 
 *
 
 possesses all powers necessary for the free and untrammeled exercise of its functions.”
 

 That case involved the use and operation of an elevator which was the principal means of reaching the courtrooms, the use and operation of which was found to have been unduly limited by an order of the county commissioners. The Supreme Court of Indiana found that the order made by the court requiring the operation of the elevator in accordance with a prescribed schedule was a proper exercise of the inherent power of the court and announced specifically that the ‘ ‘ court had undoubted jurisdiction of the subject-matter.”
 

 The Supreme Court of Wisconsin, in the case of
 
 In re Court Room and Offices of Fifth Branch of Circuit Court, Milwaukee County,
 
 148 Wis., 109, 134 N. W., 490, had before it the question of the validity of
 
 *85
 
 .an
 
 ex parte
 
 order of the Circuit Court enjoining the proposed action of the county supervisors to move that court into inadequate and unsuitable quarters. The order was held to be valid and the action of the •court sustained. The court announced that a county ■board has no power to even attempt to impede the functions of a court and that no such power could be •conferred upon it, and specifically held that courts have incidental powers necessary to preserve the full and free exercise of their judicial functions and that they “may, in appropriate cases, make
 
 ex parte
 
 orders without formally instituting an action to secure the desired relief.”
 

 It has been suggested that the power of the court in the respect under discussion is limited and circumscribed by a provision in Section 2833, General Code, in which section the general powers and duties of the sheriff are prescribed. The particular provision referred to is as follows: “Under the direction and control of the county commissioners, he shall have charge -of the courthouse.”
 

 However, as stated by the Supreme Court of Illinois in the case of
 
 Dahnke
 
 v.
 
 People,
 
 168 Ill., 102, 48 N. E., 137, where a similar statutory provision was ■under consideration: “ 'His [the sheriff’s] custody •and care cannot be construed to include the power of ■dictating to the courts what special courtrooms they ■shall occupy. This matter rests with the courts themselves, as a matter of inherent power, not with the ^sheriff even, and certainly not with the county board. ’ ’ ’
 

 Similar in import and effect is the holding of the Supreme Court of Nevada in the case of
 
 State, ex rel. Kitzmeyer,
 
 v.
 
 Davis, Controller,
 
 26 Nev., 373, 68 P., 689. The controversy in that case grew out of a challenge by the Board of Capitol Commissioners of the state of Nevada to an order issued by the Supreme Court of that state respecting the procurement of and
 
 *86
 
 payment for necessary courtroom furniture and equipment and resulted in a holding that the Supreme Court possesses the inherent power to procure at the expense of the state suitable furniture for its courtroom and did not depend upon the will of the Capitol Commissioners. In the opinion it is stated that:
 

 “To assume that the Legislature did confer any such absolute power upon the board is to assume that the Legislature possesses unlimited power of legislation in that matter — that it could by hostile legislation destroy the judicial department of government of this state. In the absence of the statutory authority given to the court by Section 2418,
 
 supra,
 
 there exists, as we believe, the inherent power in the court, growing out of and necessary to the exercise of its constitutional jurisdiction, to make the order.
 

 “This doctrine is not new, but has been recognized and acted upon by the courts of other states, and we have been unable to find any authority which holds to the contrary.”
 

 The demurrer to the petition is sustained and the writ of prohibition denied.
 

 Writ denied.
 

 Weygandt, C. J., Hart, Zimmerman and Bell, JJ., concur.
 

 Williams and Turner, JJ., dissent.