384 P.2d 110

**In re STATE of Utah in the Interest of Donald Eugene WOODWARD, an Alleged Delinquent Child.**

**No. 9744.**

Supreme Court of Utah.

Aug. 1, 1963.

Robert C. Cummings, William G. Shelton, Salt Lake City, for appellants.

A. Pratt Kesler, Atty. Gen., Neil D. Schaerrer, Asst. Atty. Gen., Salt Lake City, for respondent.

Brigette M. Bodenheimer, Chairman, Utah State Bar Committee, Richard H. Moffat, Henry S. Nygaard, Bruce E. Coke, Virginia Roberts, Salt Lake City, amicus curiae.

HENRIOD, Chief Justice.

Appeal from a juvenile court judgment committing a minor to the Industrial 'School conditionally. Appellant urged that the judgment was not supported by sufficient evidence, but we cannot agree, so that the judgment is affirmed.

Appellant attacks the constitutionality of Secs. 55–10–1 and 55–10–3, Utah Code Annotated 1953, as amended, as being violative of Art. V, Sec. 1, Utah Constitution.[1] Amicus curiae supports appellant's attack, but seeks to have the court canvass the constitutionality of a number of other sections, on the same and different constitutional grounds. We review only those points raised by the litigants on appeal and not those urged by strangers thereto; hence we will review only the two sections called to our attention by the appellant.[2] Our conclusions do not affect the status of the juvenile court, its jurisdiction

1. "The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, ex-

cept in the cases herein expressly directed or permitted."

2. There may be some doubt as to whether we should review the two points on appeal having to do with the sections mentioned, supra, since they were raised on appeal for the first time. If what we say in this opinion would jeopardize the lib-

over the subject matter or the validity of its judgment.

■ There is no question as to the status of the juvenile court: It is a court of law and an integral part of the judicial branch of government in our tripartite system, as is the Supreme District, and inferior courts sanctioned by the legislature, and the Justice Courts. This conclusion seems to be shared by the respondent itself when it concedes in its brief that:

"Art. VIII, sec. 1 of the Utah Constitution provides for the creation of inferior courts as may be established by law by the legislature" and that "the juvenile court is such an inferior court. Salt Lake County v. Salt Lake City." [3]

The juvenile court tries cases,[4] renders decisions,[5] jails adults,[6] confines minors,[7] grants clemency or probation,[8] appoints referces,[9] receives and hears complaints and petitions,[10] issues process,[11] appoints process servers,[12] can hold persons in contempt,[13] issues search and seizure warrants,[14] determines when and where the court sits,[15] is subject to an appeal of its decisions to the Supreme Court,[16] and in some areas to the District Court,[17] convicts and penalizes adults,[18] in the same manner as is done in Justice's Court,[19] is subject to the same type of procedure and practice, payment of witness fees, summoning of and qualifying jurors and accounting for fines, forfeitures and penalties as are Justice's Court,[20] arranges bonds,[21] forfeits them,[22] and performs other strictly judicial functions.

These matters are those generally reserved to the judiciary. Any legislative sanction looking toward their invasion is offensive to constitutional, traditional and historical precepts.

erty of appellant, which it will not, so far as the two sections are concerned, there would be authority for raising a constitutional issue for the first time on appeal (3 Am.Jur. 63, sec. 293, Const. Law). Another question could be posed as to whether the rule as to appellate review would apply to many matters handled by the juvenile court, which may not be real adversary proceedings, where no legal counsel may be present to preserve rights in anticipation of a possible appeal. Any such doubt is *resolved in this particular case* in favor of appellant, particularly in view of the considerable public interest and concern engendered.

3. 42 Utah 548, 134 P. 560.
4. 55-10-30.
5. 55-10-30.
6. 55-10-51.
7. 55-10-30.
8. 55-10-57.
9. 55-10-10.
10. 55-10-14.
11. 55-10-15.
12. 55-10-17.
13. 55-10-18.
14. 55-10-23.
15. 55-10-24.
16. 55-10-34.
17. 55-10-61.
18. 55-10-51.
19. 55-10-54.
20. 55-10-55.
21. 55-10-58.
22. 55-10-60.

■ Unequivocally and without ambiguity, Sec. 55–10–1 says "The * * * commission shall have the *general control and supervision* over *juvenile courts* and probation officers." The language is plain, simple unprovisional, and unqualified. It is plenary. It does not say "provided, however" or "except as herein restricted." Distinction, grammatical legerdemain or judicial legislation cannot change this clear interdiction that offends against separation of power concepts. Respondent says that "it is obvious that the general control and supervision mentioned in sec. 55–10–1 * * * is only general administrative assistance and not an exercise of judicial power." Difficulty with this assertion is that the section's language does not say so. Such contention is unrealistic in the light of practicality and common experience and runs afoul of the plain wording of the section, which is not chameleonic depending on varying philosophies as to whether a welfare commission should or should not noose the courts. The question is not a question of now-you-see-it-now-you-don't. You see it in plain English, and to say "control and supervision over juvenile courts" has no plenary connotation, simply is to be myopic.

The bona fides of present commission personnel, or any talk about past, present or future amours between the two branches of government, does not change the definition of "control," nor take the word out of the section, nor is it an insurance policy against future rifts as to kind or quantum of power reserved to each, nor can it resolve the differences and misgivings of judicial and social thinkers as to where the fountain of power lies or into which channel the power flows,—that of the legislative, executive or judicial branch.

■ After concluding that that part of the section purporting to delegate control and supervision "over the juvenile courts" offends the constitution, there would seem to be no constitutional objection to the balance of the language, and that such can be separable, as we have held before,[23] but it may be viewed with interest by the legislature, as well as the Welfare Commission as to the source of funds with which to pay salaries and operational expenses of juvenile courts.

■ Having concluded that the juvenile court definitely is an integral part of the judicial branch, it would seem inimical to common sense and to Art. VIII, sec. 11, Utah Constitution [24] having to do with removal of judges, to sanction their removal by an administrative agency of the executive branch, (as was attempted in Sec.

---

23. Steed v. Harvey, 18 Utah 367, 54 P. 1011 (1898).

24. "Judges may be removed from office by the concurrent vote of both houses of the Legislature, each voting separately * * * *"

55–10–3). Judges, in the constitutional sense, as is the case with a juvenile court judge, are amenable only to the constitutional sanctions for removal. Consequently, we conclude that the words "provided, that the judge may be removed by the commission for cause" represent an effort to create an unconstitutional grant of power,—hence invalid. The remaining language in 55–10–3, U.C.A.1953, as amended, is subject to the same observations, conclusion and authority contained in the next preceding paragraph.

McDONOUGH and CALLISTER, JJ., concur.

WADE, Justice (concurring in the result).

I agree with the prevailing opinion of Chief Justice HENRIOD that the judgment should be affirmed.

I also agree that the juvenile court is an integral part of the judicial branch of our government in our tripartite system, and that any statute which confers supervision and control over the decisions of the juvenile court judges on the Public Welfare Commission or any other officer or department of the executive branch of the government is unconstitutional.[1] Further, I think any decision rendered by a judge acting under the supervision and control of a department or officer of the executive branch of the government, and not under his own judgment and discretion, would be void. I disagree with the prevailing opinion because I think it misconstrues Section 55–10–1, U.C.A. 1953 and fails to take into account the history and background of that section, and Section 55–10–2, and the other sections in the chapter dealing with juvenile courts. I shall express my view without particular reference to the prevailing opinion.

In discussing this question keep in mind: (1) That courts usually pass on a constitutional question only when it is a controlling issue in the case;[2] (2) that even though some provisions of the statutes dealing with the juvenile courts might be in some respects unconstitutional, these provisions are separable, and if the provisions delegated unconstitutional judicial powers and functions to the Public Welfare Commission only such provisions would be void. The juvenile courts, and the office of judge thereof, which were properly created and established by the statutes, absent the exercise of any unconstitutional control by the Commission, would be at least judges de facto and their decisions are valid;[3] and (3) that if by any reasonable construction of the statutes such statutes will be constitutional, we should give the statutes the

---

1. Article V, Sec. 1, Constitution of Utah. See Note 1 main opinion.

2. 11 Am.Jur., Sec. 93, p. 720.
3. See Mill v. Brown, 31 Utah 473, 88 P. 609.

construction which will render them constitutional and thereby make them valid enactments.[4]

On the other hand, in my opinion if the statutes must be construed to mean that the Public Welfare Commission is given power or authority to supervise or control the judicial functions of the juvenile court judges, or to exercise such judicial powers, duties or functions, or coerce, induce, persuade or influence a judge to act in accordance with the determination of the Commission and not in accordance with his own determination of the issues, such statutes would be clearly unconstitutional and void.[5] For clearly, judicial powers' and functions are conferred on the juvenile judges, and if the Public Welfare Commission is authorized by statute to control, supervise or exercise such judicial powers or functions, such provisions of the statutes are unconstitutional and void.

Judicial department powers and functions can only be exercised by the judges.

Such functions involve the making of judicial decisions without interference, undue influence, or coercion. However, courts and judges are necessarily closely connected with executive officers who perform executive or quasi executive functions. Thus, the clerk of the district court, under the direction of the district judge, swears the witnesses and writes the minute entries, which are subject to correction and approval of the judge. He also is a deputy county clerk, and the court records are filed and kept in the county clerk's office. The court bailiff is a deputy county sheriff; he, under the direction of the judge, maintains order in the court, and the sheriff's office and other police officers execute the orders of the court. Court rooms and court facilities are planned, constructed, furnished and remodeled by the executive branch of our government, and sometimes these things are done with the advice and counsel of the judges involved. So it is clear that these two branches of our gov-

4. See State v. Packer Corporation, 77 Utah 500, 297 P. 1013; Thomas v. Daughters of Utah Pioneers, 114 Utah 108, at 150, 197 P.2d 477, at 499; Critchlow v. Monson, 102 Utah 378, 131 P.2d 794; Donahue v. Warner Bros., 2 Utah 2d 256, 272 P.2d 177; State Water Pollution Control Board v. Salt Lake City, 6 Utah 2d 247, 311 P.2d 370; Gammon v. Federated Milk Producers, 11 Utah 2d 421, 360 P.2d 1018.
5. Zangerle v. Court of Common Pleas Cuyahoga County, 141 Ohio St. 70, 46 N.E.2d 865; State ex rel. Broughton v. Zimmerman, 261 Wis. 398, 52 N.W.2d 903; State ex rel. Watson v. Merialdo, 70 Nev. 322, 268 P.2d 922; In re Olson (Hardy v. Olson et ux.), 111 Utah 365, 180 P.2d 210; Logan City v. Ind. Comm. of Utah, 85 Utah 131, 38 P.2d 769; Citizen's Club v. Welling, 83 Utah 81, 27 P.2d 23; Taylor v. Lee, Governor et al., 119 Utah 302, 226 P.2d 531; Tite v. State Tax Comm., 89 Utah 404, 57 P.2d 734; Mill v. Brown, 31 Utah 473, 88 P. 609; Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Co. v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318.

ernment are of necessity closely connected with each other, and without either exercising the powers or functions of the other, they work together.

The provision that the Public Welfare Commission shall have the general control and supervision over juvenile courts [6] can reasonably be construed to mean only supervision and control over the quasi executive and executive powers and functions of the juvenile courts, and does not confer power to supervise and control the juvenile court judges in their judicial function or to exercise their judicial powers.

A study of Sections 55–10–1 and 2, U.C. A.1953 indicates that the juvenile court statutes merely give the Public Welfare Commission control of the juvenile courts in relation to executive or quasi executive powers and functions, and do not au-

thorize that Commission to control the judicial powers and functions of the judges of the juvenile courts. Thus, these statutes repeatedly mention that the Public Welfare Commission shall fix salaries in accordance with the standards established by the Department of Finance, the providing of court rooms, payment of costs and expenses, the appointment of the judges and their successors in accordance with the fixed standards and special qualifications, and without regard to political affiliation.[7] These statutes further provide for the appointment of a clerk and deputy clerk for each juvenile court, and the keeping of records.[8] On the other hand, the constitutional provisions deal only with judicial powers and functions of the court and judges thereof.[9] The mention of supervisory control over inferior courts [10] deals

---

6. Sec. 55–10–1. Juvenile courts and probation officers—Control by public welfare commission—costs.—The public welfare commission shall have the general control and supervision over juvenile courts and probation officers. The commission shall have the power to fix the salaries of the judges of the juvenile courts, probation officers and other officers and employees, subject to the standards established by the department of finance. It shall provide, according to procedure established by the department of finance, court rooms, necessary equipment, supplies and other incidentals. The cost of maintaining said courts, and the expenses of the probation work shall be paid out of the general funds of the state or other funds available to the commission for such purposes.

7. See Section 55–10–1, U.C.A.1953 and Vol. 6, 1961 Pocket Supplement Section 55–10–3 and 3.1.
8. See Section 55–10–4, U.C.A.1953.
9. See Footnote 1.
10. Art. VIII, Sec. 7, Constitution of Utah. [Jurisdiction of district courts.] The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same. The District Courts or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and other writs necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions.

only with the jurisdiction of district courts and their appellate jurisdiction and power to issue writs, to carry into effect their orders, judgment and decrees. These provisions clearly deal only with judicial powers and functions in contrast with the statutes which deal only with executive or quasi executive functions connected with the juvenile courts.

To properly understand Section 55–10–2, U.C.A.1953 we must have in mind its history, background and the meaning of the term "Juvenile Court and Probation Commission." That term was the statutory name of the Commission which, from 1931 to 1941, among other things, appointed the juvenile court judges.[11] Prior to that time, from 1905 to 1931, a similar commission which appointed the juvenile judges was by statute designated "the Juvenile Court Commission."[12] In 1941, the Public Welfare Commission[13] was by statute named to "succeed to all powers and discharge all duties and perform all functions which by existing and continuing law" was previously required of the previous Commission designated as the "Juvenile Court and Probation Commission."

This is sometimes mistakenly construed as saying that the "public welfare commis-sion shall succeed to all powers and discharge all duties and perform all functions which by existing and continuing law are conferred upon and required to be discharged or performed by the juvenile court." The statute says "performed by the juvenile court and probation commission." By omitting the last words of the sentence quoted above from Section 55–10–2, the real meaning that the statute which is merely conferring on a newly created commission the functions, powers and duties of the previously designated "Juvenile Court and Probation Commission" is changed, and we create the impression that the judicial functions of the juvenile court judges are being conferred on the Public Welfare Commission. If such were the meaning of this statute, it would confer on the Public Welfare Commission judicial functions and powers and would be void, but that is clearly not the true meaning of this statute, which is that the duties of the old commission are by the new statute being conferred upon a newly created commission.

The last part of this statute provides that: "Whenever any existing and continuing law refers to or names the juvenile court and probation commission or any officer or employee thereof, it shall be con-

11. See Laws of Utah 1931, Chapter 29, Sec. 1, and Revised Statutes of Utah 1933, Chapter 7, Section 14–7–1, and Laws of Utah 1941, Chapter 67.
12. See Laws of Utah 1905 and Chapter 117, Section 1, Compiled Laws of Utah 1907, Chapter 9, Section 720; and Compiled Laws of Utah 1917, Chapter 9, Section 1814.
13. See Laws of Utah 1941, Chapter 67, Section 2.

strued to refer to and mean the public welfare commission or the corresponding officer or employee of the public welfare commission." Since the Public Welfare Commission succeeded to the powers, duties and functions of the previous commission, which the statute designed as the "Juvenile Court and Probation Commission," this simply means that the Public Welfare Commission succeeds to the powers, duties and functions of the previously designed "Juvenile Court and Probation Commission," and corresponding officers or employees of the present Commission succeed to the powers and duties and functions of such corresponding officers and employees of the previous Commission. Under this construction there is no conferring of judicial powers and functions on the new Commission, and therefore the Constitution is not violated by this statute.

The constitutional question was not raised in the trial court, so there can be no evidence of any pressure or undue influence by the Commission on the trial judge. The fact that the Commission appoints the judges for a six-year term and must reappoint or appoint a successor to the judge at the end of that term, does not violate the three departments clause of our Constitution. The fact that the Commission keeps records, circulates information and holds conferences to discuss the juvenile court problems merely suggests furnishing of educational opportunity to the judges rather than using undue influence, or usurpation of judicial function.

CROCKETT, J., concurs in the concurring opinion of WADE, J.