THE STATE, EX REL. JOHNSTON, JUDGE, APPELLEE, *v.* TAULBEE ET AL., COUNTY COMMRS., APPELLANTS.

(No. 80-1437—Decided June 17, 1981.)

*Hon. Edwin C. Johnston,* Judge, *pro se.*

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, Mr. Rankin M. Gibson, Mr. Robert J. Walter* and *Messrs. Lavelle & Goldsberry,* for appellants.

LOCHER, J.  Appellants, in their first proposition of law, assert that, pursuant to R. C. 2151.10, the board of county

commissioners is required to determine and appropriate a sum of money reasonably necessary to meet all the administrative expenses of the Juvenile Court.

We find no merit in this contention, in that R. C. 2151.10 is an impermissible legislative encroachment upon the judiciary, and is, therefore, unconstitutional.

R. C. 2151.10, effective July 26, 1979, reads, in pertinent part, as follows:

"The juvenile judge shall annually submit a written request for an appropriation to the board of county commissioners that shall set forth estimated administrative expenses of the juvenile court that the judge considers reasonably necessary for the operation of the court, including reasonably necessary expenses of the judge and such officers and employees as he may designate in attending conferences at which juvenile welfare problems are discussed***. The board shall conduct a public hearing with respect to the written request submitted by the judge and shall appropriate such sum of money each year as it determines, after conducting the public hearing and considering the written request of the judge, is reasonably necessary to meet all the administrative expenses of the court.***

"If the judge considers the appropriation made by the board pursuant to this section insufficient to meet all the administrative expenses of the court, he shall commence an action under Chapter 2731 of the Revised Code in the court of appeals for the judicial district for a determination of the duty of the board of county commissioners to appropriate the amount of money in dispute. The court of appeals shall give priority to the action filed by the juvenile judge over all cases pending on its docket. The burden shall be on the juvenile judge to prove that the appropriation requested is reasonably necessary to meet all administrative expenses of the court.***"

The predecessor to the current R. C. 2151.10 read, in pertinent part, as follows:

"The board of county commissioners shall appropriate such sum of money each year as will meet all the administrative expense of the juvenile court, including reasonable ex-

penses as he may designate in attending conferences at which juvenile or welfare problems are discussed***."

Prior R. C. 2151.10 mandated that the county commissioners appropriate the amount of money which the juvenile judge, in his sound discretion, deemed appropriate for an orderly and efficient administration of the court.

If the commissioners felt that the juvenile judge's submitted fiscal appropriations were too extreme, they were allowed legal recourse, but could only challenge the amount requested upon a showing of an abuse of discretion by the juvenile judge.

Current R. C. 2151.10 is a polar statutory scheme completely reversing the previous policy for the determination of judicial appropriations. Now the determination of appropriations for the administration of the Juvenile Court lies within the sole discretion of the county commissioners, subject to review in mandamus proceedings. The enactment of R. C. 2151.10 is an erosion of a well-settled Ohio law and democratic policy.[1]

Case law analysis on current R. C. 2151.10 is wanting, and appellants assert that prior case law was premised purely upon strict statutory construction and that the current statute should be given the same legal treatment.

Appellants' assertion is faulty in that prior case law analysis in this area did not focus upon strict statutory interpretation but rather directed its train of reasoning upon the more significant approach of separation of powers among the various branches of government. The thrust of the opinions echoed the deep-rooted doctrine of a tripartite form of democracy. The decisions reflect that a reasonably exercised spirit of mutual cooperation among the various branches of government is essential, and, more importantly, that the courts possess *inherent powers* to effectuate an orderly and efficient administration of justice without being financially or

---

[1] The Legislative Service Commission's analysis of Sub. S. B. No. 63 (current R. C. 2151.10) explicitly notes in Comment 1 that:

"***These provisions would reverse the well-established rule of law in Ohio that in the absence of an abuse of discretion on the part of a juvenile or probate judge or, apparently, of a court of common pleas, the board of county commissioners must annually appropriate the sum of money as will meet all the administrative expenses of the court which the judge or court considers necessary."

procedurally inhibited by the General Assembly.[2] *Zangerle* v. *Court of Common Pleas* (1943), 141 Ohio St. 70; *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89; *State, ex rel. Edwards,* v. *Murray* (1976), 48 Ohio St. 2d 303; *State, ex rel. Lorig,* v. *Bd. of Commrs.* (1977), 52 Ohio St. 2d 70.

In *State, ex rel. Foster,* v. *Bd. of County Commrs., supra,* this court stated, in paragraphs one and two of the syllabus, that:

"The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.

"Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government. (Paragraph two of the syllabus in *Zangerle* v. *Court of Common Pleas,* 141 Ohio St. 70, approved and followed.)"

R. C. 2151.10 as it now reads, by its granting to a legislative body, to wit: the county commissioners, the "power of the purse" over judicial administration, unconstitutionally restricts and impedes the judiciary in complete contradiction of our rudimentary democratic principles.

In *Hale* v. *The State* (1896), 55 Ohio St. 210, Judge Shauck commented concerning judicial inherent powers. He stated, at pages 213-214, that:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly

---

[2] The judgment of the Court of Appeals granted the writ of mandamus ordering appellants to appropriate the $85,200 requested for the operation of the Hocking County Juvenile Court for 1980 on the basis that such sums were reasonably necessary for the court's fiscal needs and that there was no abuse of discretion by the juvenile judge in making such appropriation requests. Our holding herein is contrary to the rationale espoused by the Court of Appeals, but the ultimate result is the same, to wit: the granting of the juvenile judge's appropriation request of $85,200.

and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, *nor in any sense upon the legislative will.* ***[Emphasis added.]

"When constitutional governments were established upon this continent there was general familiarity with the course of judicial proceedings in the administration of the common law. This power had long been exercised by courts as inherent. It was within every conception of a judicial court. ***

"A people does not lose majesty by achieving liberty. The powers of government are the same, whatever may be the form. Here, the people possessing all governmental power, adopted constitutions completely distributing it to appropriate departments. They created courts, and, in some instances, authorized the legislatures to create others. The courts so created and authorized have all the powers which are necessary to their efficient action, or embraced within their commonly received definition. ***In making the constitutional distribution of the powers of government, the people assumed that the several departments would be equally careful to use the powers granted for the public good alone. Accordingly we have the familiar and generally accepted doctrine that none of the several departments are subordinate, but that they are co-ordinate.***"

More recently, in *State, ex rel. Giuliani,* v. *Perk* (1968), 14 Ohio St. 2d 235, this court addressed a similar issue of "inherent powers" of the court. The court simply, but aptly, commented upon the issue herein, at page 237, as follows:

"This court has often said that a legislative body has a duty to provide for the needs of constitutional courts, as determined by those courts, which needs may exceed, but may not be limited by, legislative provision therefor. ***The public interest is served when courts co-operate with executive and legislative bodies in the complicated budgetary processes of government. However, such voluntary co-operation should not be mistaken for a surrender or diminution of the plenary power to administer justice which is inherent in every court whose jurisdiction derives from the Ohio Constitution."

Based upon the foregoing time-tested principles, we hold

that R. C. 2151.10, effective July 26, 1979, is an unconstitutional legislative encroachment.[3]

Appellants' second proposition of law is not to be discussed in light of our holding R. C. 2151.10 unconstitutional.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN and SWEENEY, JJ., concur.

HOLMES and C. BROWN, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I concur in the judgment herein which affirms the judgement of the Court of Appeals approving the budgetary requests of Judge Johnston. However, I dissent from the syllabus and from the opinion in that the majority, in arriving at its determination of the unconstitutionality of R. C. 2151.10, apparently has overlooked a number of valid principles of law. First, the majority has apparently overlooked the basic legal premise that enactments of the General Assembly must be given the presumption of constitutionality. *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159; *American Cancer Society, Inc.,* v. *Dayton* (1953), 160 Ohio St. 114; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142.

Second, while the courts of Ohio do have certain inherent rights to determine their own needs in the area of space for their operations, furniture and appointments, program determination and administration costs, the courts lawfully have certain limitations on the exercise of most of these inherent rights.

I have no quarrel with the majority here that *Zangerle* v. *Court of Common Pleas* (1943), 141 Ohio St. 70, states the law relative to a court's request for *space* in a courthouse. In such an instance of acquiring space for its court's functions for

---

[3] R. C. 2151.10 by its terms is applicable only to the "juvenile judge." Sub. S. B. No. 53, however, also amended R. C. 2101.11, applicable to each "probate judge," and amended R. C. 307.01, applicable to each "court of common pleas" (*i.e.,* the General Division). As amended, each of these statutes now contains identical provisions with respect to the issues presented in this case.

judicial as well as administrative purposes, "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of government in the exercise of their respective powers."

I also recognize and approve the necessity of our laws to provide for the continuing exercise of broad discretionary power by our trial courts to determine their own administrative needs. In the areas of the extent of service and program content, staff and personnel to carry out such services and programs, the trial court's determination of its own needs should prevail, and not generally be interfered with. However, in the determination of the trial court's request for administrative funds, the board of county commissioners, although not being permitted to second-guess the courts as to these court-determined needs, should, as the legislative body of the county which is basically responsible for the fiscally sound acquisition and distribution of county funds to meet the needs of the county, reasonably have the right to review such request as to the availability of county funds.

Additionally, insofar as a court's request for the necessary furniture, fittings or appointments for its courtroom and adjunct space is concerned, the trial court's inherent power must give way to a number of considerations that may reasonably be exercised by the board of county commissioners. First, the board may review the request to determine if such funds are indeed reasonable for purposes of court-related functions; second, the board may determine that such request is within its lawful power to carry out; and, third, the board may review such requests, and determine the availability of county funds that would be needed to fulfill such request.

Accordingly, I would modify the syllabus law of *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89, to hold that the administration of justice, and the exercise of the court's powers to accomplish such may not be impeded by the other branches of government, but that the reasonableness of the budget requests of the courts, and the availability of the funds, may be reviewed by the county commissioners pursuant to law.

Pursuant to the scheme as provided for in R. C. 2151.10, effective July 26, 1979, the juvenile judge, as involved in this

case,[4] submits a written request for an appropriation setting forth the estimated administrative expenses of the Juvenile Court that the judge considers reasonably necessary for the operation of the court. Admittedly, the phraseology of the section, setting forth the review and determinative power of the board as to the amounts "reasonably necessary to meet all the administrative expenses of the court***" is unfortunately broad. However, such language should be reasonably construed to effect a constitutional enactment as meaning that the board may look to the reasonableness of the request, in the sense that such request is indeed for the acquisition of staff or facilities to carry out the judicial functions, that such facilities are not *per se* notably and obviously beyond reasonableness, and that the request does not seek that the board do an illegal act in the granting of such request, or the provision of such facilities.

This questioned section of law involved here, as well as the sections pertaining to the general division of the common pleas court, and the Probate Court, provide for the protection of the basic inherent powers of our courts to reasonably determine their own needs, *i.e.*, the provision for the bringing of an action in mandamus in the Court of Appeals in the district, in the event that the board of county commissioners fails or refuses to comply with the request of the court. Such a procedure permits the judicial system to determine the reasonableness of the trial court's request; therefore, the determination of the appropriation of the trial court does not lie within the sole discretion of the county commissioners.

The procedure as set forth in R. C. 2151.10 does not *per se* present an unconstitutionally impermissible encroachment upon the judicial power. In this regard, I am in agreement with Judge Grey's statement in the Court of Appeals' opinion that:

"If the legislature intended to permit the commissioners to determine the amount necessary to run the juvenile court, such a statute would be unconstitutional. The power to control what the court spends ultimately becomes the power to control what the court does. Such a principle is anathema to an inde-

---

[4] Similar sections of law were enacted at the same time as R. C. 2151.10 pertaining to the general division of the common pleas court in R. C. 307.01, and to probate courts in R. C. 2101.11.

pendent judiciary. But just as the judicial branch must not be impeded by the other branches, the judicial branch must not be allowed to run rampant over the other branches. The doctrine of *separation* of powers must work hand in hand with the doctrine of *balance* of powers."

Relating my above discussion of the constitutionality of R. C. 2151.10 to the facts in this appeal, I conclude that the Court of Appeals was correct in determining this statute to be a valid one.[5]

Secondly, the procedure utilized by the Court of Appeals in approving the needs of the Juvenile Court followed the procedures intended in R. C. 2151.10. The Court of Appeals reviewed the evidence adduced in this original action, and properly found that Judge Johnston had sustained his burden of proof that the requested appropriations were necessary for the operation and maintenance of the Hocking County Juvenile Court.

Accordingly, I would affirm the judgment of the Court of Appeals in every respect. However, in that this court did affirm the Court of Appeals insofar as the budget request of Judge Johnston is concerned, I concur in that determination embodied within the judgment.

C. BROWN, J., concurs in the foregoing concurring and dissenting opinion.

---

[5] It is interesting to note that the procedure set forth in this section is somewhat similar to that followed by this court in obtaining the appropriation for its administrative expenses from the General Assembly. The court presents its budgetary request to the General Assembly by and through the Governor's Executive budget request. The administrative staff of this court presents testimony to the finance committees of both the House of Representatives and the Senate; and subsequently the budgetary request of the court is considered by the committees and the General Assembly, and the appropriation made in accordance with such request, or in accordance with the monies concluded to be available for all departmental and agency needs.