THE STATE EX REL. DONALDSON, JUDGE, *v.* ALFRED, MAYOR, ET AL.

IN RE PROVIDING COUNSEL FOR SHAKER HEIGHTS MUNICIPAL COURT; CITY OF SHAKER HEIGHTS, APPELLANT; DONALDSON, JUDGE, APPELLEE.

[Cite as *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327.]

---

(Nos. 91–1760 and 91–2247—Submitted February 3, 1993—Decided June 2, 1993.)

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., Niki Z. Schwartz* and *Orville E. Stifel II,* for relator/appellee Honorable Paul R. Donaldson.

*Kelley, McCann & Livingstone, Margaret Anne Cannon, Thomas J. Lee, Steven A. Goldfarb* and *Robert A. Brindza,* for respondents in case No. 91–1760 and for appellant city of Shaker Heights in case No. 91–2247.

MOYER, C.J. Relator has requested, by entering an order on his docket, payment for legal representation in responding to certain document requests served upon the municipal court. The city refused to comply with the order. In the mandamus action before us, we are asked to decide whether relator's

funding order is sufficiently akin to the court funding orders that this court has repeatedly and consistently enforced in mandamus. We hold that it is. Because we grant the writ, the appeal in case No. 91–2247 is moot, and we do not address the issue therein.

Mandamus lies when the relator demonstrates a clear legal right to the relief prayed for, the respondent has a clear legal duty to perform the act requested, and the relator has no plain and adequate remedy at law. *State ex rel. Westchester Estates, Inc. v. Bacon* (1980), 61 Ohio St.2d 42, 15 O.O.3d 53, 399 N.E.2d 81, paragraph one of the syllabus. It is well settled that mandamus is an appropriate vehicle for enforcing a court's funding order. See, *e.g., State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 569 N.E.2d 1046; *State ex rel. Musser v. Massillon* (1984), 12 Ohio St.3d 42, 12 OBR 36, 465 N.E.2d 400.

Ohio courts have the inherent power to order the funding necessary to fulfill their purposes. *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80; *State ex rel. Foster v. Lucas Cty. Bd. of Commrs.* (1968), 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884. A coordinate branch of government may not impede a court's business by refusing reasonable funding requests. *Johnston, supra; Foster, supra.* The determination of necessary administrative expenses rests solely with the court, and another branch of government may not substitute its judgment for that of the court. See *Foster, supra,* paragraph three of the syllabus. Funding orders enjoy a presumption of reasonableness. A funding authority refusing to obey a funding order bears the burden to demonstrate that the order constitutes an abuse of discretion and is unreasonable. *State ex rel. Durkin v. Youngstown City Council* (1984), 9 Ohio St.3d 132, 9 OBR 382, 459 N.E.2d 213. This court has declared unconstitutional a legislative attempt to shift the burden of proof on the reasonableness issue onto the court requesting funding. *Johnston, supra.* The doctrine of separation of powers underpins these principles. Courts must be free from excessive control of the legislative and executive branches in order to ensure their independence and integrity. *Id.,* 66 Ohio St.2d at 420–421, 20 O.O.3d at 363–364, 423 N.E.2d at 82–83; *Zangerle v. Cuyahoga Cty. Court of Common Pleas* (1943), 141 Ohio St. 70, 25 O.O. 199, 46 N.E.2d 865.

A court's ability to compel funding from a coordinate branch is not, however, unfettered. The financial condition of the funding authority, for example, is one factor in determining reasonableness. *Durkin, supra,* 9 Ohio St.3d at 134, 9 OBR at 384, 459 N.E.2d at 216; *State ex rel. Britt v. Bd. of Franklin Cty. Commrs.* (1985), 18 Ohio St.3d 1, 18 OBR 1, 480 N.E.2d 77. In *Britt,* the Franklin County Common Pleas Court attempted in a single year's

budget to bring the salaries of its employees into alignment with those of other counties. The salaries of court personnel had not been raised significantly in several years. This court denied the writ of mandamus, holding that the salary increase was too precipitous and caused an undue strain on the county purse. *Britt, supra,* 18 Ohio St.3d at 5, 18 OBR at 4, 480 N.E.2d at 80.

Another limitation, peculiar to municipal courts, is that a municipality may refuse to fund even reasonable requests if the General Assembly has placed discretion over a particular budget item with the municipal legislative authority. *State ex rel. Cleveland Mun. Court v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 63 O.O.2d 199, 296 N.E.2d 544 (city has discretion whether to fund certain support staff positions and equipment); *Musser, supra.* Any determination of the reasonableness of a funding order must also take into account the need to preserve the proper balance of power among the three branches of government. *Britt, supra,* 18 Ohio St.3d at 3, 18 OBR at 2, 480 N.E.2d at 79.

The propriety of a funding order, specifically for outside legal representation to respond to requests for court documents, is a novel issue to this court. This situation rarely arises because normally a city's law director would counsel the court. See R.C. 705.11. The acrimony between relator and respondents in this case, however, threatened to divide the loyalties of the Director of Law of the city of Shaker Heights. The city does not seriously contend at this stage that the director of law, who serves at the pleasure of respondent, the mayor of Shaker Heights, could have represented relator zealously and without at least the appearance of a conflict.

As stated in the funding order, the explicit purpose of the money was to pay legal expenses "incurred by the Court in the course of responding to subpoenas, document and information requests, and other inquiries served on or made to the Court or its personnel in their official capacities, arising out of, or related to, any investigation of the Court by the grand jury, county prosecutor, any representative of the City of Shaker Heights, any other law enforcement agency, or any representative of the news media." The city contends that funding was improper because relator would personally benefit from the representation and was unable to make impartial decisions regarding the distinction between official and personal representation.

There is, to be sure, a gray area between official and personal representation in a situation where a grand jury is investigating a judge and his or her staff, and Ohio case law provides little clarity. We find some guidance, however, from cases dealing with the right of the legislative and executive branches to employ special counsel. While a city's governing body may not employ counsel to shield itself from its own wrongdoing, "the power and duty

of the city to defend the members of its governing body against unfounded and unsupported charges of corruption and fraud is quite another matter." *Birmingham v. Wilkinson* (1940), 239 Ala. 199, 204, 194 So. 548, 552. See, also, *Osborne v. Murphy* (1937), 119 N.J.L. 65, 194 A. 551 (government body entitled to employ counsel during summary investigation of its affairs); *N. Miami Beach v. Estes* (Fla.App.1968), 214 So.2d 644 (city council entitled to appropriate funds for special counsel to represent councilmen in lawsuits alleging election law violations). A city may have an interest in a lawsuit sufficient to support the appointment of special counsel, notwithstanding the fact that the public officials are being sued as individuals, when the suit might prevent them from performing their official functions. *Id.* In such a case, the city has a significant interest in the litigation. Although the *Birmingham* case involved an investigation of city commissioners, the same principle may apply to an investigation of the judicial branch. Until relator stood accused of a crime, or until the acts for which legal representation is sought went beyond the court's normal ministerial duties, the city's obligation to provide counsel remained.

We hold that it is within the inherent powers of a municipal court to issue an order for funding private counsel for the court when the representation is for matters that are within the court's normal duties and the municipality is unable to provide counsel. A judge has the inherent authority to order a municipality to provide funding necessary for the efficient administration of the court. *Durkin, supra,* 9 Ohio St.3d at 135, 9 OBR at 385, 459 N.E.2d at 216. When a criminal matter implicating court personnel is merely in its investigatory stage, it is part of the court's normal business to respond to grand jury subpoenas and requests for court documents under the public records law. Counsel is needed to interpret such requests, to determine which records are subject to disclosure, and to contact the requesting parties for clarification and, if necessary, negotiation. As the funding authority for the court, the city must pay for these services if it cannot itself provide them.

Respondents correctly assert that a showing that relator is likely to reap primarily personal benefits would defeat relator's entitlement to the requested funding. We borrow the reasoning of the *Estes* court in holding that the city must have a significant interest in the provision of the requested services for mandamus to lie. We believe, however, that the mere fact that a grand jury is investigating possibly criminal acts, which by definition fall outside the scope of a public official's duties, does not disqualify the official from being entitled to representation where such representation involves legitimate and ordinary court business. In this case the city's interest lies in ensuring the court's efficient performance of an essential function, *i.e.,* responding to the document requests served upon it. At least until the grand jury returned

indictments of court personnel, the legal services for which funding was ordered in this case were official and not personal in nature.

The record contradicts respondents' contention that relator and other court personnel intended to benefit personally or misunderstood the difference between official and personal representation. Relator's counsel, Niki Z. Schwartz, advised the officials under investigation of their potential need to obtain personal counsel. Each obtained personal counsel after the grand jury returned indictments. Attorney Schwartz's affidavit detailing the nature of the services he provided indicates a conscientious attempt to navigate the shoals between personal and official representation. The city filed an affidavit of disqualification in the municipal court seeking to prevent relator from presiding over any further proceedings in connection with his funding order. In response, relator voluntarily recused himself from "any contempt of court proceedings which may arise" from that order. No action of relator or his counsel referred to by respondents is sufficient to destroy the presumption of regularity that the court's funding order enjoys.

Nor does there appear to be precedent for the form of the order entered by relator. Normally, funding orders take the form of periodic, line-item budgets for court staff, office space and equipment. Relator's order, however, requested a disbursement of $10,000 to be made to the court, and any further $10,000 increments as may be necessary.

Respondents argue that an order in such a form will lead to an abuse of the funds. Respondents have not demonstrated, however, that the order's mechanism of authorizing $10,000 increments, albeit unorthodox, constitutes an abuse of discretion. To the contrary, the obvious mutual animus of relator and respondents reveals that such a mechanism may have been not only wise but also necessary to guarantee the availability of a steady flow of funds to pay counsel. Relator apparently believed that submitting attorney Schwartz's bills to the city council *ex post facto* would have led to even greater wrangling and uncertainty. Our review of the record and pleadings in this case supports this conclusion. The mere payment of funds into the court, moreover, does not grant it carte blanche in the use of those funds. The city's ability to review counsel's billings and monitor his activities, either informally or through the discovery process in litigation, is a sufficient safeguard against abuse. While we recognize that a showing that the structure or mechanism of a funding order has led, or is likely to lead to, an improper use of those funds may defeat a mandamus action to enforce a funding order, the evidence in this case demonstrates no such abuse.

Where an investigation of municipal court personnel has not yet resulted in criminal charges, where the acts for which counsel is requested fall within the

court's normal duties, where a funding order explicitly states the nature of the services being requested, and where a conflict prevents the municipality from providing representation, the court is entitled to funding for such representation. Because relator's funding order satisfies these criteria, he is entitled to its enforcement.

*Writ granted.*

A.W. SWEENEY, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent.

FRANCIS E. SWEENEY, Sr., J., dissenting. A typical funding order directs the funding authority to pay only specified expenses incurred or to be incurred by the court, such as the appropriation of funds for an annual and detailed line-item budget or the payment of specified supplies, equipment, additional personnel, or salary increases. See, *e.g., State ex rel. Weaver v. Lake Cty. Bd of Commrs.* (1991), 62 Ohio St.3d 204, 580 N.E.2d 1090; *In re Furnishings for Courtroom Two* (1981), 66 Ohio St.2d 427, 20 O.O.3d 367, 423 N.E.2d 86; *State ex rel. O'Farrell v. New Philadelphia City Council* (1991), 57 Ohio St.3d 73, 565 N.E.2d 829. Here, the funding request did not direct the city to pay a specific amount for a specific expense. Instead, the order, *inter alia,* directed the city to make payments in increments of $10,000 to be disbursed by the relator in his discretion for the payment of legal expenses yet to be incurred. Such an open-ended order is ripe for abuse. As the order was overly broad, I would deny the writ.

PFEIFER, J., concurs in the foregoing dissenting opinion.