OPINION
This is a habeas corpus action in which petitioner, Samuel White, is seeking his immediate release from a state penitentiary. Upon reviewing the stipulations of fact and the parties' respective briefs, this court concludes that petitioner has demonstrated that his present incarceration is unlawful. Accordingly, a writ of habeas corpus shall be issued against respondent, Khelleh Konteh.
On November 4, 1997, petitioner was convicted on one count of receiving stolen property in the Defiance County Court of Common Pleas. He was then sentenced to a definite term of sixteen months in a state penitentiary.
Initially, petitioner was imprisoned at the Noble Correctional Institution in central Ohio. While at this facility, petitioner was charged with assault under R.C. 2903.13 on two separate occasions. In each instance, the charge against petitioner was heard by the facility's rules infraction board, which found petitioner guilty of the charge and recommended that he be required to serve additional "bad time" once his original term of incarceration had terminated. In turn, the rules infraction board's finding on each charge was ultimately upheld by the Adult Parole Board, which ordered petitioner to serve a total of one hundred twenty additional days of incarceration.
Following the imposition of the "bad time" sentence, petitioner was transferred to the Trumbull Correctional Institution, the facility at which he is presently incarcerated. Respondent is the warden of that facility.
Under the original sentence imposed by the Defiance County Court of Common Pleas, petitioner was entitled to be released from the Trumbull Correctional Institution on December 22, 1998; accordingly, his present incarceration is based solely upon the "bad time" sentence imposed under R.C. 2967.11. On February 5, 1999, petitioner filed the instant action in habeas corpus against respondent, alleging that his continued incarceration was unlawful because his constitutional right to due process had been violated during the proceedings which led to the imposition of the additional sentence. Essentially, he asserted in his petition that the "bad time" statute was unconstitutional both on its face and as applied to him.
Following consultation with a magistrate of this court, counsel for the respective parties agreed that the merits of the habeas corpus petition could be determined solely upon certain stipulations of fact. These stipulations of fact have been summarized in the foregoing statement of the case. Both counsel then submitted briefs on the issue of whether the "bad time" statute, R.C. 2967.11, is constitutional on its face.[1]
Before addressing the merits of the constitutional issue, this court would note that respondent has raised two preliminary issues in his brief. First, respondent argues that the instant petition should be dismissed because the constitutionality of a statute cannot be contested in a habeas corpus action. Second, he maintains that a writ of habeas corpus cannot be granted in this case because petitioner could have challenged the imposition of the additional sentence in other types of legal actions.
In support of his first argument, respondent cites Ex ParteWomack (1960), 171 Ohio St. 392. In that case, the petitioner sought to contest the constitutionality of the murder statute under which he had previously been convicted. In holding that a writ of habeas corpus would not lie, the Supreme Court of Ohio stated:
 "Habeas corpus may not be employed as a substitute for the remedy of appeal or as a means for testing the constitutionality of a statute in favor of one who has been convicted, where the court wherein conviction was obtained had jurisdiction to determine the question of constitutionality." (Citations omitted.) Id. at 393.
In interpreting the foregoing language, this court concludes that Womack does not stand for the proposition that the constitutionality of a statute can never form the basis of a viable petition in habeas corpus. Instead, Womack merely held that such an issue cannot be asserted in a habeas corpus action when it could have been raised during the trial proceedings.
In State v. Spikes (Sept. 4, 1998), Lake App. No. 97-L-158, unreported, it was expressly held that the constitutionality of R.C. 2967.11 could not be challenged in a direct appeal from the conviction because the question was not ripe for determination at that time. Given this holding by a majority of this court, it follows that the question cannot be raised by a criminal defendant before a trial court immediately following the original conviction. Thus, we conclude that the constitutionality of R.C.2967.11 can be raised in the context of the instant action.
In relation to his second preliminary argument, respondent argues that petitioner has an adequate remedy at law because the subject matter of this case could have been asserted in either a declaratory judgment action or a civil rights action under Section 1983, Title 42, U.S. Code. However, this court would note that the Supreme Court of Ohio has consistently held that, in order for an alternative remedy to be considered "adequate" in this context, it must be both speedy and effective. See, e.g., Zanders v.Anderson (1996), 74 Ohio St.3d 269, 271. Given that there were only approximately eighty days remaining on his "bad time" sentence when petitioner brought the instant case, it follows that neither of the two possible actions cited by respondent would have afforded petitioner "speedy" relief because neither action could have been concluded before the additional sentence had lapsed.
As part of his second preliminary argument, respondent further maintains that the instant petition does not state a viable claim in habeas corpus because the constitutional issue does not pertain to the jurisdiction of the original sentencing court. In regard to this point, our review of the relevant case law shows that the Supreme Court of Ohio has stated that, under extraordinary circumstances, a habeas corpus petition can assert nonnjurisdictional issues when there is an unlawful restraint of a person's liberty and there is no adequate remedy at law. State exrel. Pirman v. Money (1994), 69 Ohio St.3d 591, 593. Again, given the relatively short time period covered by petitioner's "bad time" sentence, we hold that extraordinary circumstances exist which warrant our consideration of the constitutionality of R.C.2967.11 in the context of the instant action in habeas corpus.
Turning to the merits of the constitutional issue, we would begin our analysis by noting that division (A) of R.C. 2967.11
states that, as used in that particular statute, the term "violation" means any act which constitutes a criminal offense under the laws of Ohio or the United States. Division (B) of the statute then provides:
 "As part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. The parole board may not extend a prisoner's stated prison term for a period longer than one-half of the stated prison term's duration for all violations occurring during the course of the prisoner's stated prison term, including violations occurring while the offender is serving extended time under this section * * *. If a prisoner's stated prison term is extended under this section, the time by which it is so extended shall be referred to as `bad time.'"
The remaining divisions of R.C. 2967.11 delineate the procedure which must be followed in imposing the additional time. Essentially, the statute provides for a three-tiered system of review of any alleged "violation" by a prisoner. Under the first tier, a rules infraction board holds an evidential hearing on the allegation. If this particular board finds that there was some evidence of a violation, it must issue a report which must include a recommendation concerning punishment. This report is then reviewed by the head of the correctional institution, who must determine whether the violation has been proven by clear and convincing evidence. If such a determination is made, it is then reviewed by the parole board, which makes the final decision as to whether the violation has been established and what additional prison time should be imposed.
In arguing that the imposition of additional prison time under R.C. 2967.11 is not lawful, petitioner contends that the statute is unconstitutional in three respects: (1) the procedure violates the doctrine of the separation of powers; (2) the procedure violates a prisoner's right to due process; and (3) the procedure violates a prisoner's right to equal protection under the law. For the following reasons, this court concludes that the first two aspects of petitioner's argument are meritorious.
The Supreme Court of Ohio has consistently emphasized that, although the Ohio Constitution does not have a specific clause delineating the concept of the separation of powers, the doctrine can be implied from the manner in which that document defines the individual powers of the three branches of the state government. See, e.g., State v. Warner (1990), 55 Ohio St.3d 31, 43-44. Regarding the judicial authority of the state, Section 1, ArticleIV of the Ohio Constitution provides:
 "The judicial power of the state is vested in a supreme court, courts of appeal, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law."
Under the doctrine of the separation of powers, the powers of the judicial branch cannot be encroached upon by the legislative and executive branches; i.e., the doctrine is intended to protect the integrity and independence of all three branches. See State v.Hochhausler (1996), 76 Ohio St.3d 455, 463. Stated differently, "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of government in the exercise of their respective powers." State ex rel.Johnston v. Taulbee (1981), 66 Ohio St.2d 417, first paragraph of the syllabus.
Consistent with the foregoing general principles, the Supreme Court of Ohio has indicated that the General Assembly cannot delegate the authority of a court to a state agency. In SouthEuclid v. Jemison (1986), 28 Ohio St.3d 157, the statute in question gave the Registrar of Motor Vehicles the power to review and reverse the judgments of municipal courts concerning certain driver's license suspensions. In concluding that the statute violated the doctrine of the separation of powers, the court emphasized that, pursuant to Section 1, Article IV of the Ohio Constitution, judicial authority can only be given to "courts," not to other types of public entities.
In essence, the Jemison court held that a judicial function cannot be performed by a non-judicial entity. In our opinion, the procedure in R.C. 2967.11 violates this rule because it allows certain prison officials and the parole board to perform a judicial act.
As was noted above, a prisoner's actions must constitute a criminal offense before he can be subject to the "bad time" procedure. During the first tier of this procedure, the rules infraction board must hold an evidentiary hearing and determine if there was any evidence of a violation. In turn, this determination is reviewed by the head of the institution and the parole board, which can only uphold the original determination if there is clear and convincing evidence of the violation. Finally, the parole board can impose a sentence which must be served inaddition to the original sentence.
Thus, because the employment of the "bad time" procedure can result in a loss of liberty, it is similar in nature to a criminal prosecution. Obviously, the prosecution of a criminal offense is a function which historically has been performed solely by courts of law. Accordingly, R.C. 2963.11 is unconstitutional because it delegates the prosecution of a criminal offense to a non-judicial entity.
As the parties note in their briefs, the Twelfth Appellate District has recently held that R.C. 2967.11 does not violate the doctrine of the separation of powers. In State ex rel. Bray v.Russell (Nov. 9, 1998), Warren App. No. CA98-06-068, unreported, the court concluded that the "bad time" procedure merely involved the imposition of additional jail time under the original sentence:
 "Bad time, however, does not impede the judicial branch. The legislature has determined that bad time is prospectively part of the sentence whenever the offender is to be imprisoned. The power of judges to sentence is granted by the legislature and can be circumscribed by the legislature." Id. 1998 Ohio App. LEXIS 5377, at 29.
In relation to this analysis, this court would first indicate that we disagree with the statement contained in the last sentence of the foregoing quote. In our opinion, the state legislature only has the authority to delineate the elements of a crime and state what type of sentence can be imposed for that crime. However, the legislature cannot actually impose that sentence. Only a court of law can perform such a function.
Second, this court would indicate that, even if we agreed with the statement in the final sentence, we still find the Bray
analysis to be unpersuasive because it does not consider the fact that the additional sentence under R.C. 2967.11 can only be imposed after the prisoner has essentially been found guilty of a new crime. That is, the "bad time" is not based upon the original offense which was tried in a court of law, but is predicated upon a new offense which was tried before an administrative board. When viewed in this light, it cannot be denied that the "bad time" statutory scheme deprives the judiciary of its exclusive authority to prosecute criminal offenses.
The foregoing considerations also support the conclusion that the procedure in R.C. 2967.11 violates a prisoner's right to due process. It is a fundamental tenet of due process that the decision to restrict an individual's freedom can only be made by a neutral magistrate, not by law enforcement officials whose primary purpose is to place offenders in jail.[2] The need for a neutral factfinder is found in many aspects of the criminal law, including whether a person should be subjected to a search warrant.
 "Briefly summarized, this court is required to apply the federal constitutional standards of probable cause as pronounced by the United States Supreme Court. State v. Joseph [(1971), 25 Ohio St.2d 95]. The recurring polestar and fundamental theme in such pronouncements is that the constitutional mandate of the Fourth Amendment that `no warrants shall issue but upon probable cause' requires the interposing of a neutral magistrate between the officer and a citizen's right to privacy * * *." State v. Graddy (1978), 55 Ohio St.2d 132, 134.
If a neutral magistrate is needed before a person can be subject to a momentary search, it should also follow that such a person should not be subjected to additional incarceration for a new offense unless he has been tried before a neutral magistrate.
In enacting R.C. 2967.11, the Ohio General Assembly has created an essentially quasi-judicial branch of government which is operated, at least in part, by officials whose very job is to keep individuals in prison. In our estimation, such officials can never be considered neutral magistrates because, like police officers, they clearly have an adversarial relationship with the prisoners.
In addition to the requirement of a neutral magistrate, theconcept of due process further provides that a person must beaccorded certain procedural protections before he can be deprivedof his liberty. In interpreting the Due Process Clauses of theFifth and Fourteenth Amendments, the United States Supreme Courthas indicated that the extent of these protections can varyaccording to the nature of the proceeding against a person. Wolffv. McDonnell (1974), 418 U.S. 539, 560. The Supreme Court hasalso stated that the determination of what protections must beaccorded in a given situation will turn upon the specific natureof the government function involved and the nature of the privateinterest affected by the government's actions. Id.
In attempting to apply Wolff to R.C. 2967.11, the TwelfthAppellate District in Bray, supra, concluded that the prisoner ina "bad time" proceeding is not entitled to the same proceduralprotections which have historically been accorded a defendant in acriminal prosecution. Instead, the Bray court held that aprisoner is only entitled to an "intermediate" degree ofprotection, which would include, inter alia, written notice of thecharges against him, an opportunity to call witnesses at thehearing, and a written statement of the rules infraction board'sfindings. In support of its holding, the Bray court noted thatthe Wolff court had expressly concluded that a prisoner is onlyentitled to this lesser degree of protection when he is thesubject of a proceeding to revoke his "good time" credits. TheBray court then stated that the imposition of "bad time" wassimilar to the revocation of "good time" credits because bothmerely extend the period of imprisonment.
Again, with all due respect to the Twelfth Appellate District, this court holds that its legal reasoning is flawed. Under Ohio's "good time" statutory scheme, which was repealed in 1996, a prisoner was entitled to have a certain number of days subtracted from his minimum or definite sentence for each month he was able to comply with the rules of the state penitentiary. If a prisoner could maintain this good behavior during his entire sentence, he was ultimately entitled to receive a credit for thirty percent of his minimum or definite term. However, if it was found that the prisoner had violated a rule of the penitentiary, he would lose his right to earn any additional credit during the remainder of his sentence.
Under the foregoing scheme, if the prisoner's right to earn credit was revoked, it merely meant that he would be required to serve a greater percentage of the minimum or definite sentence which the trial court had originally imposed. The Ohio statutory scheme did not contain a provision under which a prisoner could be required to serve a longer minimum or definite term as a result of a violation of a prison rule. That is, the Ohio scheme did not allow for the imposition of a separate sentence for a violation of prison rules.
The "good time" statutory scheme at issue in Wolff had beenenacted in the state of Nebraska. Our review of that scheme showsthat it differed from the Ohio scheme only to the extent that itallowed for the revocation of credit previously earned by theprisoner. However, like the Ohio scheme, the Nebraska scheme didnot allow for the imposition of greater time than that imposedoriginally by the trial court.
In contrast to the Ohio and Nebraska "good time" schemes, the Ohio "bad time" scheme under R.C. 2967.11 does not involve the revocation of a credit which would shorten the length of original sentence imposed by the trial court. Instead, the latter scheme allows for the extension of a prisoner's term beyond the limits of the sentence imposed originally. Thus, again, this court concludes that a "bad time" proceeding is more akin to a criminal prosecution, not a "good time" proceeding. In turn, we also conclude that a prisoner in a "bad time" proceeding should be accorded the identical due process protections which are accorded a defendant in a criminal prosecution.
Our review of R.C. 2967.11 shows that, even if the determination of a violation was made by a neutral magistrate, the statute's remaining provisions do not adequately protect a prisoner's due process rights. For example, the statute states that a finding of a violation need only be established by clear and convincing evidence, as compared to evidence beyond a reasonable doubt. Therefore, the statute is unconstitutional on the basis that it violates petitioner's due process rights under both the state and federal constitutions.
As an aside, this court would emphasize that our decision in this case should not be interpreted as depriving prison officials of the ability to discipline prisoners for bad behavior. Obviously, the ability to discipline is necessary so that the prison officials can maintain order in the facility. However, there are other types of sanctions which prison officials can readily employ to achieve this goal.
In our opinion, the ability to impose additional prison time must remain with the judicial officers of this state. If a prisoner commits an act which constitutes a crime, the matter should be the subject of a separate criminal prosecution. The usual process should not be abandoned when other sanctions for bad behavior are available to prison officials. It is a "bad time" indeed when our society makes the turn in the road where we decide that prison guards shall be given the authority to impose prison time upon the prisoners under their control.
In summation, this court concludes that R.C. 2967.11 is unconstitutional for two reasons. First, the statute violates the doctrine of the separation of powers because it allows a non-judicial agency to perform the judicial function of trying an individual for a criminal offense and imposing sentence. Second, the statute deprives a prisoner of his right to due process because it allows a prisoner to be convicted of a crime without the benefit of essential due process rights. Thus, R.C. 2967.11
is hereby declared to be null and void.
In the instant case, the parties' stipulations of fact show that petitioner is presently being held in the Trumbull Correctional Institution solely upon the additional prison time which was imposed under R.C. 2967.11. Given our holding that the "bad time" scheme is unconstitutional, it follows that the additional prison time should not have been imposed upon petitioner. Accordingly, this court concludes that, as a matter of law, petitioner's present incarceration is unlawful.
Pursuant to this analysis, judgment is hereby entered in favor of petitioner on his habeas corpus petition. Thus, an order of discharge shall issue requiring respondent to immediately release petitioner from the Trumbull Correctional Institution. ________________________________ JUDGE WILLIAM M. O'NEILL
NADER, J., concurs.
CHRISTLEY, P.J., concurs with Concurring Opinion.
[1] As part of the stipulations of fact, both counsel expressly agreed that the stipulations applied solely to petitioner's facial challenge to R.C. 2967.11, and that further evidential submissions would be needed if it became necessary to address the "as applied" challenge. Given our ultimate holding in our opinion, we conclude that it will not be necessary to consider the "as applied" challenge.
[2] In using the term "neutral magistrate" in this context, we intend for the term to refer solely to a duly elected or appointed judge of this state. It would not encompass a "magistrate" as that term is employed in Civ.R. 53.
 CONCURRING OPINION