JOURNAL ENTRY OPINION
Today this court adds its voice in agreement with the Lucas County Court of Appeals that R.C. 2967.28 is unconstitutional under both the United States and the Ohio Constitutions. Woods v.Telb and Hopkins, et al. (June 23, 1999), Lucas App. No. L — 99-1083, unreported. In Woods, the court struck down R.C.2967.28 as unconstitutional under the due process clause and the separation of powers doctrine. R.C. 2967.28 grants to the parole board a quasi — judicial function to impose post — release control on a releasee who has served his time and then allows the parole board without judicial intervention to order a releasee -to jail time for violation of the imposed control. TheWoods court found this offensive to our system of justice and counter to our criminal jurisprudential history.
In this appeal, appellant James R. Jones assigned the following error for our review:
 THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S REQUEST TO TERMINATE HIS POST RELEASE CONTROL WHERE THE TRIAL COURT IN SENTENCING THE APPELLANT HAD NEVER MADE POST RELEASE CONTROL A PART OF HIS SENTENCE NOR HAD IT EVEN MENTIONED THE POSSIBILITY TO THE DEFENDANT.
Having reviewed the record and the legal arguments of the parties, we declare R.C. 2967.28 unconstitutional; accordingly, appellant James R. Jones is discharged. The apposite facts follow.
On October 2, 1996, the trial court accepted a guilty plea from appellant for violation of a fourth degree felony carrying a concealed weapon. Several months later, the trial court sentenced him to nine months in the Lorain Correctional Institution. During the sentencing, the trial court did not verbally inform appellant that under R.C. 2967.28 the parole board may impose post — release control.
However, our review of the record revealed a plea agreement and a form titled "Plea." In the plea agreement signed by appellant, it stated that he might receive time for violating any post — release control sanction but it did not state that he might receive post — release control from the parole board after he had served his sentence. The document titled "Plea," which was not signed by appellant, stated on page 3 that "if you are sent to prison, when released you may have three to five years of post — release control, if you violate the terms of that control you could return to prison for an additional nine months."
From the record, we know appellant did receive three years of post — release control, when he was released on June 11, 1997. In January 1998, the parole board violated appellant for failing to meet the conditions of the imposed post — release control and ordered him to jail.
Appellant then filed a motion to terminate the control and a release from jail, which the trial court denied. He filed this appeal and we granted him an appeal bond. In 1998, we also granted his request to file this appeal as a delayed appeal.
At the outset, we conclude that a delayed appeal is a proper proceeding to challenge the constitutionality of. R.C. 2967.28
for a defendant who has served his original sentence, and then received confinement for violation of the parole board's imposed post-release control; we as well conclude that appellant has standing and that this matter is ripe for review. It is our discretion under App.R. 5 (A) to grant a delayed appeal. SeeState v. Spikes (Sept. 4, 1998), Lake App. No. 97-L — 158, unreported. Additionally, the eleventh district, reviewing a case of this nature, made the following pronouncement in its dictum:
 * * * [W]ith regard to post — release control pursuant to R.C. 2967.28, when the defendant receives notification that he is being considered by the parole board or the adult parole authority for increased post-release control or a prison term for a violation of a post-release sanction, he has standing to challenge the post — release control statute and the issue of the constitutionality of that statute is ripe for review. At this point, the defendant has several alternatives to bring his challenge.
 If he failed to bring an appeal of his conviction and/or sentence within thirty days of the initial judgment entry of conviction and sentence, he may petition the court of appeals for permission to file a delayed appeal of the initial judgment entry that incorporated any future bad time or post-release control imposition pursuant to App.R. 5 (A). Permission rests within the discretion of the appellate court. He may not bring a judicial appeal of the decision of the bad time panel, the warden, the director of the department of rehabilitation, the parole board, or the adult parole authority; no such right was provided in the statute, nor does the decision of any of these officials fall within the scope of R.C. Chapter 2505 or R.C. Chapter 119.
Id.
Historically, in matters like this, we have held that until a releasee has been subjected to the sanctions as provided in R.C.2967.28, he lacks standing to bring a constitutional challenge to the statute. State v. Williamson (Oct. 22, 1998), Cuyahoga App. Nos. 73130, 73132, unreported, appeal dismissed (1999), 85 Ohio St.3d 1406, citing State v. Hicks (Mar. 31, 1998), Erie App. No. E-97 — 117, unreported. In Williamson, we pointed out that:
 "It is rudimentary that, in order for one to have a right to challenge a statute upon a constitutional basis, the person posing such a challenge must, in fact, be adversely affected by that statute. Palazzi v. Estate of Gardner (1987), 32 Ohio St.3d 169, 512 N.E.2d 971." McKenny v. Hillside Dairy Co.
(1996), 109 Ohio App.3d 164, 175, 671 N.E.2d 1291. The Palazzi court held "[t]he constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." Palazzi id., syllabus (emphasis added). "Constitutional questions will not be decided until the necessity of a decision arises on the record before the court." Christensen v. Bd. of Commrs. on Grievances and Discipline (1991), 61 Ohio St.3d 534, 535, 575 N.E.2d 790. Standing to challenge the constitutionality of a statute requires demonstration of concrete injury in fact, rather than an abstract or suspected injury. State ex rel. Consumers League of Ohio v. Ratchford (1982), 8 Ohio App.3d 420, 457 N.E.2d 878.
Id. at 3.
In this case, we conclude that the trial court did inform appellant of the parole board's authority to impose post-release control and by its order incorporated the post — release control in its sentencing judgment. The parole board did in fact impose three years of control and did confine appellant for violating the imposed control. Consequently, under Williamson,
appellant has demonstrated that he has a concrete injury and we further conclude that the matter is ripe for review under this delayed appeal.
From what we can understand from the General Assembly's mandate of R.C. 2967.28, the parole board may for any reason without judicial scrutiny impose post — release control on an offender who has served all of his original sentence. The control may be for drug screening or the like. When the parole board, in its wisdom, determines a violation, it may confine the offender to jail. This quasi-judicial function is not subject to notice, to a hearing, to review, or to any form of judicial scrutiny.
In his brief, appellant argues R.C. 2967.28 violates due process under both the Ohio and United States Constitutions. We agree.
When government action implicates an individual's physical liberty, due process mandates that the government comply with both procedural and substantive due process requirements. Our standard of review when viewing a statute on due process grounds depends on the liberty interest at issue. Here, the liberty interest is one of physical freedom. Both the substantive fundamental right to be free and the procedural rights of preventing mistaken deprivation and affording an opportunity to participate in the decision-making process are at issue in reviewing the liberty interest in this case. R.C. 2967.28
implicates the right to be free and the right to be heard.
The substantive fundamental due process right to be free invokes the highest form of judicial scrutiny of a legislative act. Roe v. Wade (1973), 410 U.S. 113. R.C. 2967.28 gives the parole board jurisdiction over an individual who has "once offended." In the words of the populace, he has "served his time" as it is defined by the criminal laws of this state. He is by all criminal jurisprudence entitled to be left alone. He is different from the parolee or probationer. He has paid his debt to society. This being the case, the State has the burden of showing that a compelling interest exists in its need to deny this "once offender" his freedom and that its interest can't be achieved in a less burdensome way. On neither the compelling interest standard nor less burdensome way standard has the State sustained its burden. In fact, the State offered no justification for its need to abridge this appellant's right to be left alone. Consequently, we conclude that R.C. 2967.28 offends substantive due process.
Additionally, we conclude that R.C. 2967.28 violates this appellant's fundamental due process right to a hearing, to present evidence, and to confront and cross-examine witnesses. See Greene v. McElroy (1959), 360 U.S. 474, 496. The United States Supreme Court has held that there are two central concerns of procedural due process, the prevention of unjustified or mistaken deprivation and the promotion of participation and dialogue by individuals in the decision-making process. Marshallv. Jerrico, Inc. (1980), 446 U.S. 238. Justice Thurgood Marshall, writing for the majority, urged that it is the appearance as well as the reality of fairness that is at the core of the due process guarantee.
Of course, we note the Ohio Supreme Court's suggestion of the applicability of the usual deference of strong constitutional presumption standard when it reviewed the procedural due process issue in its decision in State v. Hochhausler (1996), 76 Ohio St.3d 455,458; citing Arnold v. Cleveland (1993), 67 Ohio St.3d 35,38. In Hochhausler, the court used the due process balancing test of Mathews v. Eldridge (1976), 424 U.S. 319. This signals to us that the balancing test if shown to favor the government would be upheld unless the appellant could show beyond a reasonable doubt that the legislative act is unconstitutional. Id., citingHilton v. Toledo (1980), 62 Ohio St.2d 394. We, however, conclude that the
Hochhausler balancing test for due process and the usual deference of presumptive validity are inapplicable here. R.C.2967.28 implicates the personal liberty of the appellant. Consequently, the strict scrutiny standard should be applied in this case. In our review, we found R.C. 2967.28 devoid of any procedural safeguards whatsoever. Consequently, the burden is on the State to show a compelling reason for the absence of these safeguards. This, the State has not done.
As an afterthought, even if we applied Mathews, we conclude that on balance the liberty interest plus the likelihood of an administrative error is far greater than the government interest and the claimed burden it might identify when required to have additional or substituted safeguards to protect against the risk of an erroneous deprivation. One's liberty is a huge interest and when one's freedom is at stake, the procedural safeguards should be huge as well. Here, the General Assembly imposed none.
Under R.C. 2967.28, the parole board sets the standard of behavior, determines when there has been a violation of that standard, and applies the punishment for such a violation. Arguably, one could say that by not providing for any procedural safeguards such as notice and an opportunity to challenge the charges, the legislature has determined the level of the process that is due. Historically, our jurisprudence teaches us that due process restrains the government in such a way as to forbid it from an at — will type of legislative act. The due process clause prohibits procedures which abridge any "fundamental principle of liberty and justice which inheres in the very idea of free government and is the inalienable right of a citizen of such a government." See Twining v. New Jersey (1908),211 U.S. 78, 106, 29 S.Ct. 14, 22, 53 L.Ed. 97, 109.
Moreover, the very core of due process affords to an individual the right to access to the courts. R.C. 2967.28 in its present form abrogates this right. In essence, it creates an administrative prison court that is free from scrutiny or review. This offends the very notion of the Bill of Rights. See In reWinship (1970), 397 U.S. 358. The Woods court pointed out the extreme danger that exists when the executive governmental branch through its police force determines the offender's charges, pronounces his guilt, and determines his punishment. The lack of the presence of a neutral, detached magistrate to intervene between the offender and his accuser is paramount and guarantees the right of access to the court system. Besides, as Justice Marshall insisted, procedural due process prevents unjustified deprivation and affords the offender an opportunity to participate in the process. Here, the appellant was afforded neither. R.C. 2967.28 violates the fundamental right to procedural due process.
Long before we are done debating this statute many will argue whether this type of case is about due process or the right to an independent judiciary. In any event, we believe that when the General Assembly enacted R.C. 2967.28, it granted to the executive branch powers best left and required to be left with the judicial branch. In Woods the court stated:
 * * * [T]he Supreme Court of Ohio has held that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." State, ex rel. Johnston v. Taulbee
(1981), 66 Ohio St.2d 417, 423 N.E.2d 80, paragraph one of the syllabus; State v. Hochhausler (1990), 76 Ohio St.3d 455, 463 — 464, 668 N.E.2d. 457. The Supreme Court of Ohio has further stated that "courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." Taulbee at paragraph two of the syllabus.
 The separation of the judiciary from the executive and administrative branches of government has been a long-standing [tenet] in our system of democracy. In Federalist Paper No. 78, Alexander Hamilton stressed the need for judicial independence: "For I agree, that "there is no liberty, if the power of judging be not separated from the legislative and executive powers." Hamilton, The Federalist (1788), quoting from 1 The Spirit of the Laws 186.
Woods at 4-5 fn. 1.
The separation of powers doctrine is the very essence of our democracy. The United States Supreme Court has consistently "given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinated branches is essential to the preservation of liberty." See, e.g.,Morrison v. Olson (1988), 487 U.S. 654, 685 — 696,108 S.Ct. 2597, 2616 — 2622, 101 L.Ed.2d 569; Bowsher v. Synar
(1986), 478 U.S. 714, 725, 106 S.Ct. 3181, 3188. "Madison, in writing about the principle of separated powers, said: "No political truth is certainly of greater intrinsic value or is stamped with the authority of more enlightened patrons of liberty." Mistretta v. U.S. (1989), 488 U.S. 361, 109 S.Ct. 647,102 L.Ed.2d 714, citing The Federalist No. 47, at 324 (J. Cooke ed. 1961). Prior to R.C. 2967.28, the Ohio parole authority's responsibility was to administer all statutes relating to parole. When a defendant had served all of his time, he was no longer subject to the parole authority. However, under R.C. 2967.28, the parole board may without due process restraints charge, determine guilt, and impose a jail sentence without benefit of judicial intervention. This, by its very core, violates the principles Madison admonished us to hold dear.
Judicial review by a neutral, detached magistrate is sacrosanct. R.C. 2967.28 does not allow for judicial review by way of appeal or any judicial intervention in any way in the parole board's granting of post — release control. This absolution from judicial intervention threatens the very foundation of our judiciary. See dissent of Judge O'Neill inState v. Pratt (Sept. 25, 1998), Lake App. No. 97-L-208, unreported. Judge O'Neill pointed out that the General Assembly has created an independent quasi-judicial branch of government within the prison system. Article IV, Section I of the Ohio Constitution mandates that the judicial power shall vest in specifically named courts. The parole board is not one of them.
In Woods, the court pointed out the differences between the former parole system and this post — release control system. The most important distinction is the loss of due process rights. Under the former, the alleged violator had an opportunity to challenge the violation before the court. Here, the parole board is given unfettered discretion to violate and punish. The very framework of this post-release control system violates the true understanding of due process, and offends the separation of powers doctrine.
Finally, we reject any notion that the post — release control system is civil in nature and remedial in purpose. SeeState v. Cook (1998), 83 Ohio St.3d 404, certiorari denied (1999), 119 S.Ct. 1122. R.C. 2967.28 gives the parole board legislative, police, and judicial powers. The parole board, as the legislature, may define the behavior that is forbidden. It then may police the behavior by charging for a violation of the forbidden behavior. Thereafter it determines guilt and sets punishment. Any attempt to characterize the parole board's action as remedial would be unconscionable.
Consequently, appellant's arguments are sustained; R.C. 2967.28
is unconstitutional, and the trial court's denial of motion to terminate post-release control is reversed. Defendant — appellant is discharged.
Judgment reversed.
This cause is reversed.
It is ordered that appellant recover of appellee his costs herein.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J., and
JAMES D. SWEENEY. J., CONCUR.
 _______________________ PATRICIA ANN BLACKMON JUDGE